Rebecca Horne, #16846
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Phone: (385) 233-6612 x3152
Email: rhorne@lawhq.com
*Attorney for Plaintiff*

**IN THE FOURTH JUDICIAL DISTRICT COURT
UTAH COUNTY, STATE OF UTAH**

| | |
|---|---|
| **THOMAS ALVORD,** an individual,<br><br>Plaintiff,<br><br>v.<br><br>**QUICK FI CAPITAL INC.,** a corporation; **DANIEL HARDWICK** individually and as CEO of Hardwick Investors Group LLC dba Quick Fi Capital; and **TEXNICHA OUTSOURCING SOLUTION**, a corporation,<br><br>Defendants. | **AMENDED VERIFIED COMPLAINT**<br><br>Tier 2<br><br>Case No. 2:19-CV-000459<br><br>**Chief Magistrate Judge Paul M. Warner** |

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff respectfully files this Amended Complaint. Rule 15(a)(1) provides that "a party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a response pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, a party may amend its pleading with the opposing party's written consent or the court's leave and "[t]he court

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff has filed the Amended Complaint within the time permitted by Rule 15 as a matter of course.

Through the Amended Complaint, Plaintiff seeks to add specific allegations of conduct, as well as to name Daniel Hardwick, CEO of Hardwick Hardwick Investors Group LLC, and Texnicha Outsourcing Solution, a Philippine corporation, as joint Defendants. Defendant alleged to Plaintiff that Texnicha Outsourcing Solution was the source of the calls and was significantly involved in planning and perpetrating the telemarketing violations that victimized Plaintiff. Texnicha informed Plaintiff that Daniel Hardwick himself provided it with telephone numbers to dial on Quick Fi's behalf and for its exclusive benefit, and ensured that those numbers complied with TCPA and DNC requirements.

Plaintiff believes that, along with the original Defendant Hardwick Investors Group LLC dba Quick Fi Capital (erroneously sued as Quick Fi Capital Inc. but hereinafter referred to as "Quick Fi"), these new defendants, Texnicha Outsourcing Solution ("Texnicha") and Daniel Hardwick, engaged in practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA"). Plaintiff has uncovered conduct and practices engaged in by Texnicha and Mr. Hardwick in collaboration with Quick Fi that support adding these parties as defendants. Plaintiff believes further discovery will substantiate Plaintiff's evidence supporting Quick Fi, Daniel Hardwick, and Texnicha's joint and several liability.

Plaintiff therefore submits this Amended Complaint as a matter of course.

## INTRODUCTION

1. Thomas Alvord ("Plaintiff") brings this action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the joint illegal actions of Quick Fi and Texnicha ("Defendants"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. The TCPA was designed to prevent calls and text messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone

consumers from this nuisance and privacy invasion.

Id. at § 12; see also, *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id.* At §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

## PARTIES

6. Plaintiff is, and at all times mentioned herein was, an individual citizen and resident of the County of Utah, State of Utah.

7. Plaintiff is, and at all times mentioned herein was, a "person" defined by 47 U.S.C. § 153 (39).

8. Plaintiff is informed and believes, and thereon alleges, that Defendants are, and at all times mentioned herein were, individuals and a "person" as defined by 47 U.S.C. § 153 (39).

9. Defendant Quick Fi is a corporation of the State of New York, having a place of business at 755 Waverly Avenue, Suite 216, Holtsville, NY 11742.

10. Defendant Texnicha is a corporation of the Republic of the Philippines, having a place of business at 202, Tulip Development Inc., A.S. Fortuna St., Bakilid, Mandaue City, Philippines.

11. Defendants conducted business in the State of Utah and in the County of Utah, and within this judicial district.

## JURISDICTION AND VENUE

12. Jurisdiction is properly vested in this Court because (i) 47 U.S.C. § 227 et seq. explicitly authorizes a person or entity to bring an action under the TCPA in state court, and (ii) pursuant to Utah Code Ann. §78A-5-102 the district court has original jurisdiction in all matters civil. Jurisdiction in the United States District Court for the District of Utah is proper in this matter because both parties have consented in writing to its removal. [Dkt. # 2.]

13. Venue is appropriate in this Court pursuant to Utah Code Ann. §78B-3-307 because the cause of action arises in the County of Utah, State of Utah and was removed to the United States District Court for the District of Utah by the Defendant. [*Id.*]

## FACTUAL ALLEGATIONS

14. Plaintiff is, and at all times mentioned herein was, the sole owner of the mobile phone number 801-735-1968.

15. The phone number 801-735-1968 is registered on the national Do Not Call List at

    https://www.donotcall.gov.

16. Defendants have called Plaintiff on Plaintiff's cell phone number 801-735-1968 at least

    17 times. The date and number from which Defendants made these calls are as follows:

    a. From 435-315-0709 on February 4, 2019

    b. From 435-315-0709 on April 17, 2019

    c. From 435-315-0709 on April 18, 2019

    d. From 435-315-0709 on April 29, 2019

    e. From 435-315-0710 on April 30, 2019

    f. From 435-315-0709 on May 1, 2019

    g. From 435-315-0710 on May 2, 2019

    h. From 435-315-0709 on May 9, 2019

    i. From 435-315-0711 on May 15, 2019

    j. From 435-315-0710 on May 16, 2019

    k. From 435-315-0709 on May 16, 2019

    l. From 435-315-0710 on May 16, 2019

    m. From 435-315-0709 on May 21, 2019

    n. From 435-315-0711 on May 22, 2019

    o. From 435-315-0709 on May 22, 2019

    p. From 435-315-0710 on May 28, 2019

    q. From 435-315-0711 on May 28, 2019

17. For the sole purpose of identifying the telemarketer, Plaintiff answered the call on May 28, 2019 from 435-315-0710.

18. A long and very clear pause after Plaintiff answered was followed by a beep. At that point, a woman with a foreign accent began speaking. The caller identified herself as "Ana."

19. On the LindedIn profile for Quick Fi Capital, there are five employees listed. https://www.linkedin.com/company/quickficapital/.

20. One of those employees is Diana Bien. https://www.linkedin.com/in/dianabien/.

21. A common nickname for Diana is Ana.

22. On Diana Bien's LinkedIn profile, she says her occupation is telemarketing, that she is a "Lead Generator" for "QuickFiCapital," and that her place of work is the Philippines.

23. After talking with Plaintiff and asking a few questions, "Ana" transferred the call. "Ana" identified herself as "Ana from downstairs" and introduced Plaintiff to "Brian." Plaintiff asked Brian for additional information.

24. "Brian" emailed Plaintiff a loan application. It came from Brian Edelson with an email address "@quickficapital.com." The email also had active links to quickficapital.com, which is controlled by Defendant Quick Fi.

25. According to "Ana," she was calling from the same location as "Brian," who held himself out as a Quick Fi employee and emailed Plaintiff from a domain belonging to and controlled by Quick Fi. Brian did not dispute Ana's assertion that she was calling from

the same office, ratifying her statement that they were operating out of the same building. Thus, according to Ana and Brian, they are both employees of Quick Fi Capital.

26. After the original Complaint [Docket #6] was filed by the Court, Plaintiff received an unsolicited letter from Defendant Quick Fi's attorneys.

27. In the letter, Quick Fi identified the company that made the calls to Plaintiff as Texnicha Outsourcing Solutions. Quick Fi did not say how they knew Texnicha had placed the calls to Plaintiff, but said the "inbound call . . . was referred by Texnicha."

28. Plaintiff contacted Texnicha for information.

29. Texnicha responded to Plaintiff with the following information:

    a. Texnicha has been working with Quick Fi for the past 4 years.

    b. Leads transferred to Quick Fi are exclusive to Quick Fi.

    c. Texnicha has its own dialer it can use (an automated dialer), but the automated dialer can also be provided by the contracting company.

    d. Texnicha can use its own numbers for leads but prefers for clients to provide Texnicha with numbers to dial. Quick Fi provides Texnicha with a dialing list.

    e. Texnicha uses a generic, made-up business name when dialing numbers for its clients, in order to stay "out of trouble."

    f. Texnicha is legally registered in the Philippines by Mark Taliman. It has been in business for 6 years and has 3 branches, with over 150 employees.

    g. Daniel Hardwick and Alex Cutrone manage Texnicha's dialing leads by running the dialing list through TCPA and DNC removal software before sending Texnicha the list to call.

30. Daniel Hardwick is the CEO of Hardwick Investors Group LLC dba Quick Fi Capital. Alex Cutrone works for Quick Fi Capital.

31. Quick Fi's CEO controlled and provided the calling list Texnicha used to call Plaintiff. Or, alternatively, Quick Fi's employees themselves called Plaintiff, since Ana holds herself out as a Quick Fi employee. Thus, the calls to Plaintiff were made either by (i) Defendant Quick Fi, or (ii) by a third party for whom Defendant Quick Fi is vicariously liable because the calls were made for the benefit of Quick Fi and Quick Fi had the right to control, the ability to control, or otherwise could and should have controlled the actions of the third party. As the FCC has explained:

> [A]llowing [Defendant] to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions…. We see no reason that [Defendant] should not be liable... for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the [Defendant] has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised.

*In re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6593 (2013)

32. By calling Plaintiff, Defendants harmed Plaintiff in the exact way that Congress sought to protect in enacting the TCPA.

33. Plaintiff has suffered an invasion of privacy, an annoyance and nuisance, and lost time in answering and reviewing the unsolicited calls.

34. Defendants depleted Plaintiff's phone battery, which forced Plaintiff to have to pay for the electricity to recharge his phone. Additionally, Plaintiff could not use his phone while it was being recharged, which loss was directly and proximately caused by Defendants' wrong actions which depleted Plaintiff's battery.

35. At all times relevant Defendants purposefully availed themselves of the benefits and protections of Utah law as well as conducted business in the State of Utah and in the County of Utah, within this judicial district.

36. Defendants did not establish or implement, with due care, practices and procedures to effectively prevent telemarketing calls to phone numbers on the national do not call registry, including Plaintiff's phone number.

37. On information and belief, Plaintiff's phone number was entered into and stored in a dialing database.

38. On information and belief, Defendants utilized equipment with the capacity to call random, sequential, and/or pre-programmed phone numbers in order to call Plaintiff.

39. Because there was a delay and a beep between the time that Plaintiff answered and the time that Defendant Quick Fi's employee Ana spoke, Plaintiff believes and alleges that the calls made to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1), which has the capacity

to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

40. The telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

41. Plaintiff is neither a subscriber nor client of either of Defendants' services, had never previously contacted Defendants before the calls, nor had Plaintiff provided Defendants with Plaintiff's personal information or cellular telephone number. Thus, at no time did Plaintiff provide Defendants or their agents with prior express written consent to receive unsolicited telephone calls, pursuant to 47 U.S.C. § 227(b)(1)(A).

42. These telephone calls violated 47 U.S.C. § 227(b)(1) and were for the purpose of telemarketing and solicitation of business.

## STANDING

43. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendants;

    c. and is likely to be redressed by a favorable judicial decision.

See, *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.

44. In order to meet the standard laid out in *Spokeo and Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

### A. The "Injury in Fact" Prong

45. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (Id.)*.

46. For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In the present case, Plaintiff was called on his cellular phone by Defendants, who utilized an ATDS and a pre-recorded voice or artificial voice paired with a voice recognition system. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

47. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016) at 7. In the instant case, it was Plaintiff's phone that was called. It was Plaintiff's personal privacy and peace that was invaded by Defendants calls, that were delivered using an ATDS. Finally, Plaintiff alone is responsible to pay the bill on his cellular phone. All of these injuries are particularized and specific to Plaintiff.

### B. The "Traceable to the Conduct of Defendant" Prong

48. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that his injuries are traceable to the conduct of Defendants.

49. In the instant case, this prong is met simply by the fact that the calls were made to Plaintiff's cellular phone by Defendants or by a third party for whom one of the Defendants is vicariously liable.

### C. The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

50. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

51. In the present case, Plaintiff's Prayers for Relief include a request for damages for each of the calls made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

52. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

53. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.

## FIRST CAUSE OF ACTION:

## ILLEGAL USE OF AN ATDS OR PRERECORDED VOICE

### 47 U.S.C. § 227(b)

54. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55. Defendants' use of an ATDS to contact Plaintiff constitutes a violation of 47 U.S.C. § 227(b).

56. As a result of Defendants' negligent violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

58. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION:

## ILLEGAL SOLICITATION OF PERSONS ON THE DO NOT CALL LIST

### ACT 47 U.S.C. § 227(c)

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. Defendants' contacting of Plaintiff's cellular phone number on the Do Not Call List constitutes a violation of 47 U.S.C. § 227(c).

61. As a result of Defendants' negligent violations of 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

62. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. § 227(c)(5)(C).

> "The fact that the [TCPA] includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both.... Additionally, the two private-right-of-action provisions contain significant textual differences, indicating that they are distinct provisions to be treated independently.... The two subsections, moreover, target different harms.... By enacting separate private-right-of-action provisions, each including a statutory damages provision, Congress evidenced its intent that a person be able to recover for the telemarketer's failure to institute the minimum procedures for maintaining a do-not-call list as well as the additional harm of the call being automated. We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call." *Charvat v. NMP, LLC*, 656 F.3d 440, 448-9 (6th Cir. 2011)

63. Plaintiff is also entitled to and seeks injunctive relief prohibiting Defendants from such conduct in the future.

## PRAYER FOR RELIEF

64. WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants, who are jointly and severally liable:

65. As a result of Defendants' violations of 47 U.S.C. § 227(b), Plaintiff seeks an amount not less than $25,500.00.

66. As a result of Defendant's violations of 47 U.S.C. § 227(c), Plaintiff seeks an amount not less than $25,500.00.

67. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting Defendants from such conduct in the future.

68. Any other relief the Court may deem just and proper.

Respectfully submitted,
Date: August 2, 2019

/s/ *Rebecca Horne*

Rebecca Horne
Attorney for Plaintiff

I, THOMAS ALVORD, declare and state the following:

I have read the foregoing VERIFIED COMPLAINT, that I know the contents thereof, and that the same are true to the best of my knowledge.

Pursuant to Utah Code Ann. § 78B-5-705, I declare under criminal penalty of the State of Utah that the foregoing is true and correct to the best of my belief and knowledge.

DATED and SIGNED on August 2, 2019.

/s/ *Thomas Alvord*

Thomas Alvord
Plaintiff

## CERTIFICATE OF SERVICE

I certify that on the 1st day of August, 2019, I served a true and correct copy of the foregoing AMENDED COMPLAINT to the following by CM/ECF and email:

| | |
|---|---|
| Thomas Alvord<br>10782 N. La Costa<br>Cedar Hills, Utah 84062<br>Email: thomas@lawhq.com<br>*Plaintiff* | Joseph Skinner, #10832<br>SCALLEY READING BATES<br>HANSEN & RASMUSSEN, P.C.<br>15 West South Temple, Suite 600<br>Salt Lake City, Utah 84101<br>Telephone: (801) 531-7870<br>Email: joseph@scalleyreading.net<br><br>Stuart M. Richter (applying pro hac vice)<br>Andrew J. Demko (applying pro hac vice)<br>KATTEN MUCHIN ROSENMAN LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>Tel. (310) 788-4400<br>Email: stuart.richter@kattenlaw.com<br>andrew.demko@kattenlaw.com<br><br>*Attorneys for Defendant* |

Date: August 1, 2019

                                              /s/ *Rebecca Horne*
                                              Rebecca Horne
                                              Attorney for Plaintiff