Rebecca Horne, #16846
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Phone: (385) 233-6612 x3152
Email: rhorne@lawhq.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **Thomas Alvord,**<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>**Quick Fi Capital Inc.**,<br><br>　　　　　　Defendant. | **OPPOSITION TO MOTION<br>TO DISMISS BY DEFENDANT**<br><br>Case No. 2:19-CV-00459-PMW<br><br>Chief Magistrate Judge<br>Paul M. Warner |

　　　　Plaintiff respectfully opposes Defendant's Motion to Dismiss [Docket #18], which challenges the Court's personal jurisdiction over Defendant. Hardwick Investors Group LLC dba Quick Fi Capital (hereinafter "Quick Fi") filed its 12(b)(2) Motion to Dismiss on July 22, 2019.

　　　　Defendant alleges that it does not regularly conduct business in Utah so as to subject it to general jurisdiction there. Defendant further alleges that it is not responsible for and did not make the calls to Plaintiff that would form the basis for the Court to exercise specific jurisdiction over Defendant.

　　　　Plaintiff is confident that Defendant not only regularly conducts business in Utah but that Quick Fi itself is directly responsible for the calls that were made to Plaintiff. However, even if a

third party made the calls in question, Plaintiff asserts that Defendant is vicariously responsible. As noted in Plaintiff's accompanying Amended Complaint [Dkt. #19], Plaintiff has uncovered new evidence that directly contradicts Defendant's claims and substantiates Defendant's vicarious and/or joint and several liability. Both the original Complaint [Dkt. #6] and Plaintiff's Amended Complaint [Dkt. #19] allege facts sufficient to withstand Defendant's motion to dismiss.

Finally, Plaintiff has filed an amended complaint as a matter of course. A properly filed amended complaint "supersedes the original and renders it of no legal effect." *Enderwood v. Sinclair Broadcast Group, Inc.,* 2007 WL 1180426, at **6 (10th Cir. April 23, 2007) (unpublished opinion) (citing *Davis v. TXO Production Corp.,* 929 F.2d 1515, 1517 (10th Cir. 1991)). "[W]hen an amended complaint is properly filed, a defendant's answer to the original complaint is superseded." "Similarly, when an amended complaint is properly filed, a defendant's answer to the original complaint is superseded." *Janzen v. Watonga Hosp. Trust Auth.*, NO. CIV-11-70-D, at *2 (W.D. Okla. Sep. 7, 2012). Defendant's Motion to Dismiss is moot, as Plaintiff's complaint has been amended and the original complaint is no longer of any legal effect. Defendant's Motion to Dismiss seeks dismissal on a superseded complaint, which renders it moot. Even if it were not moot, the motion to dismiss is premature. Plaintiff's allegations are sufficient to survive a 12(b)(2) motion, but if, after discovery, it were to be found that Plaintiff's allegations were deficient in some way, Defendant could bring a motion for summary judgment before the Court. Or if the Court has doubts about the propriety of exercising personal jurisdiction over Defendant Quick Fi after reading Plaintiff's Amended Complaint [Dkt. #19], the Court could also choose to allow limited discovery on the issue of jurisdiction.

Dismissal is simply not appropriate at this stage of the proceedings, and Plaintiff's allegations are sufficient to establish minimum contacts for purposes of personal jurisdiction. Plaintiff respectfully asks the Court to find that it has personal jurisdiction over Defendant and deny Defendant's motion, allowing Plainitff's suit to continue to discovery and trial.

## PROCEDURAL HISTORY

Plaintiff filed this suit in Utah State Court on May 29, 2019. Quick Fi removed the case to this Court on July 1, 2019. [Dkt. #2]. On July 8, 2019, Quick Fi moved to extend its response deadline to July 22, 2019 [Dkt. #8], which the Court granted. [Dkt. #9]. On August 1, 2019, Plaintiff filed an Amended Complaint simultaneously with this Opposition to Defendant's Motion to Dismiss. [Dkt. #19, 20].

## STATEMENT OF FACTS

Quick Fi made seventeen (17) telemarketing calls to Plaintiff's cell phone number in violation of the Telephone Consumer Protection Act ("TCPA"). (Compl. ¶¶ 13–15; Am. Compl. ¶¶ 14–16.) Defendant erroneously asserts that each of the calls came from only two numbers. (Def.'s Mot. Dismiss at 2.) However, the seventeen calls came from three numbers: 435-315-0709, 435-315-0710, and 435-315-0711. (Compl. ¶ 15; Am. Compl. ¶ 16.) The callers used an automatic telephone dialing system ("ATD") to contact Plaintiff. (Compl. ¶¶ 23–25, 33–34, 49; Am. Compl. ¶¶ 18, 29c, 37–39, 46–47, 54–58.) Plaintiff answered the last call to identify the telemarketer and asked Defendant to email additional information. (Compl. ¶ 16; Am. Compl. ¶¶ 17, 23.) Defendant Quick Fi emailed Plaintiff a loan application. (Compl. ¶ 17, Am. Compl. ¶ 24.)

New evidence has come to light that establishes Quick Fi's direct liability, as well as its vicarious and joint and several liability. While these facts were not alleged in the original complaint, that complaint has now been superseded as a matter of law and a matter of course by Plaintiff's Amended Complaint. [Dkt. #19.] This newly-discovered evidence is summarized below.

Quick Fi Capital lists five employees on its official LinkedIn profile, one of which is Diana Bien. (Am. Compl. ¶¶ 19–20.) On Diana Bien's LinkedIn profile, she lists her occupation as telemarketing and her title as "Lead Generator" for "QuickFiCapital." (*Id.* at ¶ 22.) Diana lists her place of work as the Philippines. *Id*. On May 28, 2019, Plaintiff answered a call from 435-315-0710 in which the caller, after an obvious pause and a beep, identified herself as "Ana." (*Id.* at ¶ 17.) A common nickname for Diana is "Ana." (*Id.* at ¶ 21.) "Ana" transferred Plaintiff to Brian Edelson, and introduced them to each other. (*Id.* at ¶ 23.) Ana identified herself on the transfer to Brian as "Ana from downstairs." Brian did not object to this characterization. (*Id.* at ¶¶ 23, 25.) Brian emailed Plaintiff a loan application, with an email address coming from "@quickficapital.com," and links within the email to quickficapital.com. (*Id.* at ¶ 24.)

Defendant Quick Fi sent an unsolicited letter to Plaintiff after the original complaint was filed. (*Id.* at ¶ 26.) In this letter, Defendant identified the company that made the calls to Plaintiff as "Texnicha Outsourcing Solutions" ("Texnicha") but did not say how they knew Texnicha had placed the calls to Plaintiff. (*Id.* at ¶ 27.) Defendant Quick Fi admitted that the May 28, 2019 call referred Plaintiff to Quick Fi. *Id*. The only person Plaintiff spoke with after being "referred" was Brian Edelson. (*Id.* at ¶¶ 23–25.) Brian Edelson has a quickficapital.com email and is a known Quick Fi employee. *Id*. Plaintiff contacted Texnicha for more information and was told

that Texnicha has been working with Quick Fi for the past 4 years, that leads for Quick Fi are exclusive to Quick Fi, that Texnicha can use its own dialer or a client's dialer, that Texnicha's clients provide it with numbers to dial, that Texnicha calls under a false name to "stay out of trouble," that Texnicha is a Philippine corporation, and that Daniel Hardwick and Alex Cutrone manage Texnicha's dialing leads and run the dialing list through TCPA and DNC removal software before sending Texnicha the list of numbers to call. (*Id.* at ¶¶ 28–29.)

Daniel Hardwick is the CEO of Defendant Quick Fi, also known as Hardwick Investors Group LLC dba Quick Fi Capital. (*Id.* at ¶ 30.) Alex Cutrone is an employee of Quick Fi Capital. *Id.* Four employees of Quick Fi Capital have been identified as managing the calls made to Plaintiff. This includes Quick Fi's CEO, Daniel Hardwick, as well as Alex Cutrone, who are allegedly in charge of providing Texnicha a list of numbers to dial that have been "scrubbed" for DNC and TCPA compliance. (*Id.* at ¶¶ 19–30.) Quick Fi employee Ana identified herself as the caller, which Quick Fi employee Brian Edelson ratified. (*Id.* at ¶¶ 23–25.) Quick Fi directly provided Plaintiff's number for contact, whether Quick Fi's employees called Plaintiff or whether Quick Fi gave Plaintiff's number to Texnicha to call. (*Id.* at 18, 29.)

**ARGUMENT**

Quick Fi is subject to personal jurisdiction in Utah because there is sufficient evidence to establish that Quick Fi called Plaintiff and otherwise purposefully directed at least seventeen calls to Plaintiff in Utah**.**

**I.       Legal Standard**

A 12(b)(2) motion to dismiss tests the plaintiff's theory of personal jurisdiction as well as the facts supporting it. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153–54

(2d Cir. 1999). The Court must not only test the jurisdictional theory, but also the facts that allege the defendant subjected itself to the Court's jurisdiction. *Id.* at 154. A dismissal for lack of personal jurisdiction is a dismissal without prejudice because it is not a dismissal on the merits. In essence, the court determines it is powerless to proceed to judgment and can not adjudicate the validity of the claim. Where, as here, the Defendant raises a timely personal jurisdiction challenge, the Plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction of the Defendant without violating due-process requirements. *See Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991).

General personal jurisdiction may be established by showing that the Defendant's contacts with Utah are so continuous and systematic that it is essentially at home in Utah. This level of substantial and familiar contacts with the forum state may establish personal jurisdiction over a Defendant even for claims that arise that are distinct from the Defendant's continuous and systematic activities within that forum. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

Specific personal jurisdiction may be established by showing that the Defendant has sufficient minimum contacts with Utah to satisfy the due process requirements of the Fourteenth Amendment to the Constitution of the United States of America. This kind of personal jurisdiction is appropriate when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id*. (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Here, Plaintiff bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). That burden can be met simply with a prima

facie showing. *Id*. "All well-pled allegations in the plaintiff's complaint are taken are true unless they are contradicted by the defendant's affidavits." *Zooba, Inc. v. Savicom, Inc.*, Case No. 2:17-cv-01098-JNP (D. Utah Jun. 8, 2018) (quoting *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990). If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor. *Id*.

While Quick Fi argues that it is not "at home" as a corporation in Utah, that is not the only test that establishes personal jurisdiction. Plaintiff does not allege that Defendant Quick Fi has continuous and systematic contacts with Utah such that those contacts would satisfy the requirements to find general jurisdiction. Instead, the Court has jurisdiction over Defendant based on principles of specific jurisdiction. In order to find specific jurisdiction, the plaintiff must establish the defendant's minimum contacts with the forum by showing that the defendant "purposefully directed its activities toward the forum jurisdiction, and the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Trujillo v. Williams,* 465 F.3d 1210, 1218 (10th Cir. 2006) (internal citations omitted). To show a defendant's activities are "purposefully directed," the plaintiff must allege the defendant took actions that were 1) intentional, 2) expressly aimed at the forum state, and 3) with the knowledge that the harm would be felt in the forum state. *See Van Ornum v. Am. Med. Ass'n,* No. 2:14-2019 WL 1382286 at ¶ 5 (D. Utah Mar. 27, 2019).

**II.     Quick Fi is subject to specific personal jurisdiction in Utah, because it purposefully directed its activities to Utah.**

**A.     Quick Fi intentionally made the calls to Plaintiff.**

Plaintiff has alleged seventeen (17) phone calls he received from three telephone numbers: 435-315-0709, 435-315-0710, and 435-315-0711. (Compl. ¶ 15; Am. Compl. ¶ 16.)

When Plaintiff answered the last call, the caller identified herself as "Ana" who works "downstairs" with Brian Edelson, a known Quick Fi employee who also identified his company as Quick Fi in his later emails to Plaintiff. (Am. Compl. ¶¶ 17–25.) Thus, because the calls were made by Diana, aka "Ana", and transferred to Brian Edelson, both of whom are Quick Fi employees, it was in fact Defendant who intentionally made the calls to Plaintiff.

Defendant knew Plaintiff's cell phone number had an area code of 801. If Defendant had no knowledge of Plaintiff's area code and location, it would not have been possible for Defendant to call Plaintiff. By making calls to a phone number with the area code of 801, the calls were expressly aimed at the forum state of Utah. Additionally, Defendant would have reasonably known that any harm from Defendant's calls would be felt in the forum state to which the area code is assigned.

Defendant's contradictory claims that it did not make any calls to Plaintiff are only supported by citations to evidence not in the record (Def.'s Mot. Dismiss at 7 III.A., citing an unknown "Declaration."). The Court cannot therefore consider the evidence.

Because the seventeen (17) calls to Plaintiff were made by Quick Fi employees, Defendant intentionally made the calls to Plaintiff. Quick Fi initiated the calls and took intentional action directed at Plaintiff in Utah. Quick Fi has "purposefully directed its activities toward the forum jurisdiction," Utah, "and the underlying action is based [on TCPA and DNC violations] that ar[o]se out of or relate to the defendant's contacts with the forum." *Trujillo* at 1218. Therefore, Defendant is subject to the Court's exercise of specific jurisdiction.

    **B.**    **Alternatively, Quick Fi authorized its agent, Texnicha or another company, to make the calls to Plaintiff on Quick Fi's behalf.**

Although Defendant claims that the calls must have been made by an unknown third-party marketing company that makes referrals to Quick Fi (Def.'s Mot. Dismiss at 7), that is not the story Defendant told Plaintiff. In its letter to Plaintiff, Defendant identified Texnicha as the company who referred Plaintiff's call to Quick Fi, and further alleged that Texnicha was solely responsible for making the calls to Plaintiff. (Am. Compl. ¶¶ 26–27.)

Plaintiff has alleged seventeen (17) instances of Quick Fi "purposefully directing" calls to his telephone in Utah. If it is true that Texnicha placed the calls that are at issue, Quick Fi purposefully directed and authorized those calls.

Defendant's claims that the numbers that called Plaintiff belong to a third-party marketing company are supported only by citations to evidence not in the record (Def.'s Mot. Dismiss at 9, again citing an unknown "Declaration."). The Court cannot therefore consider the evidence. However, for rebuttal purposes only, Defendant Quick Fi has identified that third-party marketing company as "Texnicha." (Am. Compl. ¶¶ 26–27.) Texnicha has confirmed that Quick Fi provides Texnicha with the numbers that Texnicha dials when calling leads for Quick Fi, and that Quick Fi's CEO, Daniel Hardwick, is personally responsible for providing those numbers to Texnicha and ensuring that they comply with TCPA and DNC regulations. (Am. Compl. at ¶¶ 28–30.) Therefore, Defendant Quick Fi has authorized and directed Texnicha's calls.

If it is established that Texnicha placed the calls at issue, Plaintiff alleges that Quick Fi provided Texnicha with Plaintiff's number, gave Texnicha assurances that calling the numbers Quick Fi provided would be in compliance with TCPA and DNC regulations, and directed Texnicha to call Plaintiff's number along with the other numbers Quick Fi provided Texnicha. Texnicha calls the phone numbers Quick Fi provides on Quick Fi's behalf, for the exclusive

benefit of Quick Fi. Quick Fi has "directed its agents" to take action in the forum by calling Plaintiff. *Hernandez v. Chevron U.S.A. Inc,* 347 F. Supp. 3d 921, 966 (D.N.M. 2018). Texnicha is thus Quick Fi's agent and Quick Fi is vicariously liable for Texnicha's TCPA and DNC violations.

If Texnicha is not found to be Quick Fi's agent, Plaintiff asserts that Quick Fi and Texnicha are jointly and severally liable for the torts, since it is impossible for Plaintiff to determine at this stage of litigation who actually placed the calls to Plaintiff and it is clear that both parties were purposefully and intentionally involved in the scheme that caused Plaintiff's harm.

### III. Exercising personal jurisdiction over Quick Fi in Utah comports with traditional notions of fair play and substantial justice.

Clearly, Quick Fi has the necessary minimum contacts with Utah to establish specific personal jurisdiction. "[W]ith minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Dudnikov v. Chalk*, 514 F.3d 1063, 1079 (10th Cir. 2008) (internal citations omitted). If minimum contacts have been established, the Defendant must produce compelling reasons that personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). In examining the defendant's reasons, the Court must weigh five factors: (i) the burden on the defendant; (ii) the forum state's interest in resolving the dispute; (iii) the plaintiff's interest in receiving convenient and effective relief; (iv) judicial efficiency; and (v) the interests of the

states in furthering fundamental substantive social policies." *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007).

Here, Defendant Quick Fi again cites to evidence that is not in the record. (Def.'s Mot. Dismiss at 12.)  Therefore, the Court cannot consider Defendant's claims and Defendant has not made a showing that personal jurisdiction in Utah would offend "traditional notions of fair play and substantial justice." *Int'l Shoe* at 316.

However, strictly for purposes of rebuttal, Plaintiff will address Defendant's arguments. First, although Defendant calls itself a "small New York-based business," Defendant has offices in New York and California and has between 11-50 employees, according to LinkedIn. (https://www.linkedin.com/search/results/all/?keywords=quick%20fi%20capital&origin=SPCK&spellCorrectionEnabled=false ) Defendant could hire attorneys to represent itself in Utah. Although the cost of travel and litigation in Utah is more expensive than litigating in Utah, the cost of travel for Defendant's representative is not significantly more than it would be to represent itself in New York. Accomodations can be found in Utah much more cheaply than in New York, and attorney fees are much cheaper here than in either New York or California. Even the cost of court fees is lower in Utah than in New York. The first factor does not establish a compelling reason why personal jurisdiction over Defendant should be ignored.

Second, Quick Fi argues that TCPA claims arise under federal law and that Utah has no greater interest in resolving TCPA claims than any other forum. Defendant neglects to mention that the Plaintiff is a Utah resident. Utah may not have an interest in resolving TCPA claims in general, but it has a significant interest in resolving its own citizens' claims. The second factor favors supporting a finding of personal jurisdiction.

Third, although Plaintiff could sue Quick Fi in any federal forum, the cause of action originated in Utah, the nexus is in Utah, and the harm occurred in Utah. In contrast to Defendant's claims that it is just a "small New York-based business," Plaintiff is actually a single individual, with significantly less resources than Defendant. Plaintiff will encounter much more difficulty litigating in another forum, and Defendant itself chose to remove Plaintiff's suit from state court to this Court. In doing so, it could be argued that Defendant ratified this Court as an appropriate venue for it to litigate in. Otherwise, it would have filed a 12(b)(2) motion in State Court. The third factor weighs heavily in Plaintiff's favor.

Fourth, litigating in New York or any other venue would significantly delay the suit, as Plaintiff's resources as an individual are limited. Judicial economy favors a speedy resolution, which can be obtained best in the forum in which personal jurisdiction is appropriate and the suit has already begun being litigated. Defendant argues that this factor favors neither party. However, denying jurisdiction in Utah despite Defendant's intentional and purposeful contacts with Plaintiff here would require Plaintiff to refile in an unfamiliar and foreign forum. It would cause additional delay in a case that is not for a significant amount of money. It is not implausible to assume that Plaintiff's fees would soon outweigh the statutory damages Defendant has incurred, a likely possibility which cannot have escaped Defendant's notice. This factor thus weighs heavily in Plaintiff's favor.

Fifth, the TCPA and DNC are federal law that each state has a substantial interest in enforcing. It is a substantive social policy in America that individuals may not be harassed and constantly interrupted by unsolicited and unwarranted telemarketing calls. Telemarketing violations are responsible for distractions, interrupting emergency and medical services, causing

lost wages and lost human capital and time. The calls have have a negative cumulative effect on each of the States, in terms of human capital and the sheer resources that must be devoted to stopping, managing, and/or blocking these calls. Every State, including the State of Utah, has an obligation under federal law to enforce the TCPA and DNC, furthering the substantive social policies that have been created to ameliorate the negative effect these unwanted calls have on its citizens and on our nation. The fifth factor favors a finding of personal jurisdiction. In short, Defendant has not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Dudnikov* at 1079.

## CONCLUSION

Quick Fi's Motion to Dismiss should be denied. Quick Fi's motion responds to a document that is of no legal effect, now that the original complaint has been amended. Thus, the Motion to Dismiss is moot and/or premature. To the extent that Quick Fi's motion could be considered valid, it should still be denied. Plaintiff has not yet been able to conduct discovery, but has alleged sufficient purposeful behavior on Quick Fi's part to satisfy specific personal jurisdiction. Finally, the exercise of jurisdiction is reasonable and satisfies "traditional notions of fair play and substantial justice." *Int'l Shoe* at 316.

DATED this 2nd  day of August, 2019.

                /s/ *Rebecca Horne*
                Rebecca Horne
                Attorney for Plaintiff

Case 2:19-cv-00459-DB Document 20 Filed 08/02/19 Page 14 of 15

CERTIFICATE OF SERVICE

I certify that on the 1st day of August, 2019, I served a true and correct copy of the foregoing AMENDED COMPLAINT to the following by CM/ECF and email:

| | |
|---|---|
| Thomas Alvord<br>10782 N. La Costa<br>Cedar Hills, Utah 84062<br>Email: thomas@lawhq.com<br>*Plaintiff* | Joseph Skinner, #10832<br>SCALLEY READING BATES<br>HANSEN & RASMUSSEN, P.C.<br>15 West South Temple, Suite 600<br>Salt Lake City, Utah 84101<br>Telephone: (801) 531-7870<br>Email: joseph@scalleyreading.net<br><br>Stuart M. Richter (applying pro hac vice)<br>Andrew J. Demko (applying pro hac vice)<br>KATTEN MUCHIN ROSENMAN LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>Tel. (310) 788-4400<br>Email: stuart.richter@kattenlaw.com<br>andrew.demko@kattenlaw.com<br><br>*Attorneys for Defendant* |

Date: August 2, 2019

/s/ *Rebecca Horne*
Rebecca Horne
Attorney for Plaintiff