Joseph Skinner, #10832
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
Email: joseph@scalleyreading.net

Stuart M. Richter (*pro hac vice granted*)
Andrew J. Demko (*pro hac vice granted*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Tel.    (310) 788-4400
Email:  stuart.richter@kattenlaw.com
        andrew.demko@kattenlaw.com

Attorneys for Quick Fi Capital Inc. and Daniel Hardwick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **Thomas Alvord**,<br><br>     Plaintiff,<br><br>v.<br><br>**Quick Fi Capital Inc.**, a corporation; **Daniel Hardwick** individually and as CEO of Hardwick Investors Group LLC dba Quick Fi Capital; and **Texnicha Outsourcing Solution**, a corporation,<br><br>     Defendants. | **MOTION TO DISMISS BY DEFENDANTS QUICK FI CAPITAL INC. AND DANIEL HARDWICK**<br><br><br>Case No. 2:19-CV-000459<br><br>**Chief Magistrate Judge Paul M. Warner** |

In response to Plaintiff's Amended Verified Complaint ("Amend. Compl." [Dkt #19]),

Defendants Hardwick Investors Group LLC dba Quick Fi Capital (erroneously sued as Quick Fi

Capital Inc. but hereinafter referred to as "Quick Fi") and Daniel Hardwick respectfully submit

this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

Specifically, with respect to Federal Rule of Civil Procedure 12(b)(2), this Court lacks personal jurisdiction over both Quick Fi and Daniel Hardwick.  Quick Fi is a New York corporation with its principal place of business in Holtsville, New York.  It does not regularly transact business in Utah so as to be subject to general jurisdiction.  Nor did it engage in any conduct—making calls to Plaintiff in the State of Utah—forming the basis for Plaintiff's claims so that Quick Fi can be subject to specific jurisdiction in Utah for purposes of this action.  Similarly, Daniel Hardick is an individual residing and domiciled in New York.  Mr. Hardwick also did not personally engage in any conduct directed at Utah forming the basis of Plaintiff's claims.  Plaintiff's Amended Verified Complaint, therefore, should be dismissed as against both Quick Fi and Daniel Hardwick for lack of personal jurisdiction.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this case should also be dismissed as against Daniel Hardwick because Plaintiff has failed to state a claim for personal liability.  Plaintiff has not alleged that Mr. Hardwick participated in any wrongful activity or took any action outside of his role as CEO of Quick Fi, nor can Plaintiff allege (and has not alleged) alter ego liability such that Mr. Hardwick might be liable for the alleged actions of Quick Fi.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff's Amended Verified Complaint purports to establish liability against Quick Fi and Daniel Hardwick under the Telephone Consumer Protection Act ("TCPA") based on seventeen (17) telemarketing calls to Plaintiff's cell phone number.  (Amend. Compl. ¶¶ 14-16.)  Plaintiff alleges each of these calls came from three numbers—(435) 315-0709, (435) 315-0710, and (435) 315-0711—and at least one call, on May 28, 2019, involved the use of an automatic telephone dialing system ("ATDS").  (Amend. Compl. ¶¶ 16-18.)  Plaintiff claims he answered the call on May 28, 2019 to "identify[] the telemarketer."  (Amend. Compl. ¶ 17.)  After a "long and very

clear pause" "followed by a beep," Plaintiff claims a woman with a foreign accent began speaking and "identified herself as 'Ana.'" (Amend. Compl. ¶ 18.)  Plaintiff alleges "Ana" is a "common nickname" for "Diana," and one of Quick Fi's employees is Diana Bien.  (Amend. Compl. ¶¶ 20-22.)  According to Plaintiff, "Ana" then transferred the call to someone named "Brian," and in doing so "identified herself as 'Ana from downstairs;'" Brian supposedly did not dispute her "assertion that she was calling from the same office."  (Amend. Compl. ¶¶ 23, 25.)  Brian Edelson, with an email address @quickficapital.com, then allegedly emailed Plaintiff a loan application in response to Plaintiff's request for additional information. (Amend. Compl. ¶¶ 23-24.)

Based on these allegations alone, Plaintiff leaps to the conclusion that Quick Fi called Plaintiff, "since Ana holds herself out as a Quick Fi employee."  (Amend. Compl. ¶¶ 25, 31.)  Alternatively, Plaintiff asserts that Defendant Texnicha Outsourcing Solution ("Texnicha"), a third party marketing company, made the calls, but Quick Fi must be vicariously liable because: (i) Texnicha has allegedly been "working with" Quick Fi for four (4) years; (ii) leads transferred are "exclusive" to Quick Fi; and (iii) Quick Fi provided Texnicha with a dialing list it used to call Plaintiff.  (Amend. Compl. ¶¶ 29, 31.)

Plaintiff also seeks to hold Mr. Hardwick personally liable because (1) he is the CEO of Quick Fi; (2) he purportedly "manage[s]  Texnicha's dialing leads by running the dialing list through TCPA and DNC removal software before sending Texnicha the list to call; and (3) he "controlled and provided the calling list Texnicha used to call Plaintiff."  (Amend. Compl. ¶¶ 29-31.)  Accordingly, Plaintiff's Amended Verified Complaint claims two causes of action under the TCPA against Quick Fi and Mr. Hardwick for (i) use of an ATDS or prerecorded voice, and (ii) solicitation of persons on the "Do Not Call" list. (Amend.  Compl. ¶¶ 54-63.)

Plaintiff filed this lawsuit against Quick Fi in Utah State Court on May 29, 2019.  Quick Fi removed the case to this Court on July 1, 2019. [Dkt. #2.]  Quick Fi moved to dismiss on July 22, 2019. [Dkt. # 18.]  On August 2, 2019, Plaintiff filed an Opposition to Quick Fi's Motion to Dismiss, [Dkt. #20], and an Amended Verified Complaint. [Dkt. #19.].[1]  Plaintiff's Amended Verified Complaint added Mr. Hardwick and Texnicha as defendants, as well as allegations, as outlined above, purporting to show Quick Fi employees called Plaintiff, or alternatively, Texnicha is an agent of Quick Fi.

Plaintiff, however, has still not alleged and cannot allege facts sufficient to establish personal jurisdiction over Quick Fi or Mr. Hardwick in Utah.  Plaintiff is a Utah resident. (Amend. Compl. ¶ 6.)  Quick Fi is a New York corporation with its headquarters and principal place of business located in Holtsville, New York.  (Amend. Compl. ¶ 9; Declaration of Daniel Hardwick ("Hardwick Decl."), attached as **Exhibit 1**, ¶¶ 5, 7.)  Quick Fi acts in a brokerage capacity to assist businesses in obtaining financing from banks, private merchant banks and merchant cash advance companies. (Hardwick Decl. ¶ 6.)  Quick Fi arranges financing for companies nationally, but its business of arranging financing is conducted exclusively from New York.  (Amend. Compl. ¶ 9; Hardwick Decl. ¶¶ 5-7.)  Quick Fi has no offices, agents, employees, or accounts in Utah. (Hardwick Decl. ¶ 8.)  Nor does Quick Fi regularly conduct business in Utah.  (*Id.* ¶ 9.)  In fact, from March 2015 to date, Quick Fi has only acted in a brokerage capacity to arrange financing for two companies that Quick Fi believes operate in the State of Utah.  (*Id.*)  These two transactions

---

[1] Plaintiff's Amended Verified Complaint supersedes and renders moot Quick Fi's original Motion to Dismiss. *See Enderwood v. Sinclair Broadcast Grp., Inc.*, No. 06-6232, 233 Fed. Appx 793, 800, 2007 WL 1180426, at *6 (10th Cir. April 23, 2007) (unpublished) (citing *Davis V. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991)).  Accordingly, Quick Fi and Mr. Hardwick file this Motion to Dismiss in response to Plaintiff's Amended Verified Complaint, which addresses Plaintiff's new allegations, as well as the arguments Plaintiff raised in its Opposition to Quick Fi's original Motion to Dismiss.

represent less than 0.2% of the financing transactions arranged by Quick Fi during the same time period. (*Id.*)

Similarly, Mr. Hardwick is an individual residing in Lake Ronkonkoma, New York. (*Id.* ¶ 2.) Mr. Hardwick has not traveled to Utah, does not have any residences or accounts there, and has never owned or leased real or personal property there. (*Id.* ¶ 3.) Mr. Hardwick has never owned a business licensed in Utah or otherwise related to Utah, has never been employed or paid taxes in Utah and has never been sued in Utah outside of this litigation. (*Id.* ¶ 4.)

Further, neither Quick Fi nor Mr. Hardwick made any calls to Plaintiff. (*Id*. ¶ 11.) Plaintiff's new allegations that unidentified Quick Fi employees called Plaintiff are unfounded and conclusory. Indeed, none of the numbers Plaintiff claims were used to call him belongs to Quick Fi or Mr. Hardwick. (*Id*.) In fact, as a brokerage that arranges financing, Quick Fi does not make outbound telemarketing calls. (*Id*. ¶ 10.) Typically, third parties who have solicited businesses that require financing, will refer those businesses to Quick Fi. (*Id*. ¶ 6.) If Quick Fi is able to arrange financing, the third-party marketing company may be paid a commission. (*Id.*)

The third-party marketing companies that refer customers to Quick Fi are not owned by or agents of Quick Fi or Mr. Hardwick; they are independent companies. (*Id.* ¶¶ 12-15.) Neither Quick Fi nor Mr. Hardwick control how these companies solicit or interact with businesses that require financing. (*Id.* ¶ 12.) The third-party marketing companies do not have exclusive relationships with Quick Fi. (*Id.*) In other words, these companies may refer businesses to Quick Fi or other companies like Quick Fi that can arrange financing for them. (*Id*.)

In this case, Quick Fi believes that one such third party company, Texnicha, placed the phone calls to Plaintiff. (*Id.* ¶ 15; Declaration of Mark Taliman ("Taliman Decl."), attached as

**Exhibit 2**, ¶¶ 4-5.)  When Plaintiff responded and expressed interest in financing for his business, Texnicha referred him to Quick Fi.  (Hardwick Decl. ¶ 16; Taliman Decl. ¶ 5.)  Again, neither Quick Fi nor Mr. Hardwick made any of the calls to Plaintiff, and Quick Fi only communicated with him after his call to Texnicha was transferred to Quick Fi by Texnicha itself.  (Hardwick Decl. ¶¶ 11, 16.)  The one and only communication Quick Fi initiated with Plaintiff was an email, not a phone call from an ATDS.  (*Id.*)  Further, contrary to Plaintiff's claims, neither Quick Fi nor Mr. Hardwick provided a list of telephone numbers including Plaintiff's number to Texnicha.  (*Id.* ¶¶ 14-15; Taliman Decl. ¶ 4.)  Mr. Hardwick does not manage, control or provide calling lists to Texnicha or any other similar third-party marketing company, nor does any other employee at Quick Fi.  (Hardwick Decl. ¶¶ 14-15.)

## ARGUMENT

**I.      This case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over Quick Fi and Daniel Hardwick.**

Neither Quick Fi nor Mr. Hardwick are subject to general or specific jurisdiction in Utah because (i) neither is "at home" in Utah, and (ii) neither called Plaintiff or otherwise purposefully directed any activity to Utah.

### A.      Legal standard for personal jurisdiction.

For a federal court to exercise personal jurisdiction over a defendant in a federal question case, the court must first determine: (1) "whether the statute at issue potentially confers jurisdiction by authorizing service of process on the defendant[,]" and (2) "whether the exercise of jurisdiction comports with due process."  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (internal quotation marks and citations omitted).  The TCPA does not authorize nationwide service of process.  *Patrick v. N & G Capital LLC*, No. 2:14-CV-194 TS, 2014 WL

3547831, at *2 (D. Utah July 17, 2014) (unpublished).   Accordingly, Federal Rule of Civil Procedure 4(k)(1)(a) dictates that the federal court must "apply the law of the state in which the district court sits."   *Id.* (internal citations omitted).   In Utah, the long-arm statute authorizes personal jurisdiction to the limits of due process.  *Id.*; *see also* Utah Code Ann. § 78B-3-201.   Thus, the two-step inquiry collapses into one federal due process analysis.  *Patrick*, 2014 WL 3547831, at *2.

To be consistent with due process, the exercise of personal jurisdiction is appropriate only where (i) the nonresident defendant has sufficient "minimum contacts" with the forum state, such that he can "reasonably anticipate being haled into court there," and (ii) jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

Minimum contacts can be established through general or specific jurisdiction.  *Singleton v. Kat Expl. Inc.*, No. 2:17-CV-00556-CW-DBP, 2018 WL 718369, at *2 (D. Utah Feb. 5, 2018) (unpublished).   For general jurisdiction, a defendant must have substantial, continuous, and systematic contacts with the forum, such that the defendant is essentially "at home" in the forum. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014)).   Absent exceptional circumstances, a corporation is only "'at home' in the forum(s) where it is incorporated or where it maintains its principal place of business." *Id.* (internal citations omitted).   "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 982–83 (D. Utah 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

For specific jurisdiction, minimum contacts demand a defendant "purposefully direct[] its activities toward the forum[,]" and the "underlying action [be] based upon activities that arise out

of or relate to the defendant's contacts with the forum." *Patrick*, 2014 WL 3547831, at *3 (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006)).  "In analyzing a defendant's 'purposefully directed' activities, courts look for allegations showing (a) 'an intentional action' by the defendant, (b) 'expressly aimed at the forum state,' (c) with the defendant's 'knowledge that the brunt of the injury would be felt in the forum state.'" *Van Ornum v. Am. Med. Ass'n*, No. 2:14-CV-921-RJS-EJF, 2017 WL 9481123, at *11 (D. Utah Mar. 22, 2017) (unpublished) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)).  Specific jurisdiction must thus arise from the defendant's actions, "not [from] events that are the result of unilateral actions taken by someone else." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).  In addition, Plaintiff must show a causal link between the defendant's contacts and the injuries at issue. *Van Ornum*, 2017 WL 9481123, at *11.

Plaintiff bears the burden of establishing personal jurisdiction and must make a *prima facie* showing when the issue is raised early in litigation and is based on pleadings and affidavits.  *Neuer v. Dental Res. Sys., Inc.*, No. 14-2319, 2015 WL 4634044, at *1 (D. Kan. July 27, 2015) (unpublished).

### B. Quick Fi and Daniel Hardwick are not "at home" in Utah and thus cannot be subject to general jurisdiction in Utah.

Here, as Plaintiff's Complaint admits, Quick Fi is a New York corporation and does not maintain its principal place of business in Utah.  (Amend. Compl. ¶ 9; Hardwick Decl. ¶¶ 5, 7.) Accordingly, Quick Fi cannot be subject to general jurisdiction in Utah.  *See Paxman v. Li*, No. 2:17-CV-01290, 2018 WL 1972679, at * 1 (D. Utah Apr. 26, 2018) (unpublished) (no general jurisdiction over defendants in Utah when defendants were incorporated in California and there was no evidence they conducted business in Utah).

Moreover, Quick Fi does not regularly do business in Utah.  (Hardwick Decl. ¶ 9.)  Quick Fi has arranged financing for only two businesses in Utah over the last four years, which represents only 0.2% of the financing transactions arranged by Quick Fi during that time period.  (*Id.*)  This unrelated business hardly amounts to "exceptional circumstances" sufficient to justify general jurisdiction in this case.  *See Spencer v. Harley-Davidson, Inc.*, Case No. 2:16-CV-00427-DN, 2019 WL 1382285, at *5 (D. Utah Mar. 27, 2019) (unpublished) (no general jurisdiction where Utah was not paradigm forum and there was no evidence defendant's operations in Utah were "so substantial as to render it at home in Utah").

Similarly, Daniel Hardwick resides in New York.  (*Id.* ¶ 2.)  Mr. Hardwick has not traveled to Utah, does not have any residences, accounts or telephone numbers there, has never owned or leased real or personal property in Utah, has never owned a business licensed in Utah or otherwise related to Utah, has never employed residents of Utah or been employed in Utah, and has never been sued in Utah outside of this litigation.  (*Id.* ¶¶ 3-4.)  Mr. Hardwick is therefore not subject to general jurisdiction in Utah.  *See Celtig, LLC*, 347 F. Supp. 3d at 979; *see also Kendall v. Turn-Key Specialists, Inc.*, 911 F. Supp. 2d 1185, 1194-95 (N.D. Okla. 2012).

**C.**     **Quick Fi and Daniel Hardwick cannot be subject to specific jurisdiction in Utah, because they did not purposefully direct any activity to Utah.**

**i.**     **Neither Quick Fi nor Daniel Hardwick made the calls alleged in Plaintiff's Complaint.**

Plaintiff's alleged injuries stem from 17 phone calls Plaintiff received from three telephone numbers: (i) 435-315-0709; (ii) 435-315-0710; and (iii) 435-315-0711.  (Amend. Compl. ¶ 16.) While Plaintiff makes conclusory, unsupported claims that "Quick Fi's employees" made these calls, none of these numbers belongs to Quick Fi or Mr. Hardwick.  (Hardwick Decl. ¶ 11.)  In fact, neither Quick Fi nor Mr. Hardwick made the calls; they were likely made by Texnicha, which

eventually referred Plaintiff to Quick Fi.  (*Id.* ¶¶ 11, 15-16; Taliman Decl. ¶ 5.)  Neither Quick Fi nor Mr. Hardwick made any calls to Plaintiff, and therefore did not take any intentional action directed at Utah forming the basis of Plaintiff's two claims.  *Spencer*, 2019 WL 1382285, at *5 (no specific jurisdiction where no evidence defendant performed any activity in Utah or purposefully directed any activity at residents of Utah).

Further, even if Plaintiff's conclusory allegations that Quick Fi employees made the calls—despite the fact that they did not come from Quick Fi's numbers—are taken as true, Plaintiff still cannot use these alleged contacts with Utah to establish personal jurisdiction over Mr. Hardwick individually.  Specifically, the Tenth Circuit recognizes the fiduciary shield doctrine, under which the "exercise of personal jurisdiction over an individual may not be based solely on acts the individual performed in a purely representative capacity."  *Kendall v. Turn-Key Specialists, Inc.*, 911 F.Supp.2d at 1195 (citing *Home—Stake Production Co. v. Talon Petroleum C.A.*, 907 F.2d 1012, 1017 (10th Cir. 1990)).  "Jurisdiction over the representative of a corporation may not be predicated on jurisdiction over the corporation itself, and *jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state*."  *Id.* (quotations omitted) (emphasis added).  To attribute a corporate entity's "acts and obligations" to a particular person, and vice versa, "it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality or separateness of such person and corporation has ceased[.]" *Id.*

The Amended Verified Complaint does not establish that Mr. Hardwick individually took any action directed to Utah.  The only allegations of conduct specific to Mr. Hardwick include: (1) Mr. Hardwick purportedly "manage[s] Texnicha's dialing leads by running the dialing list through TCPA and DNC removal software before sending Texnicha the list to call; and (2) Mr. Hardwick

"controlled and provided the calling list Texnicha used to call Plaintiff." (Amend. Compl. ¶¶ 29-31.)  Not only are these allegations untrue, (Hardwick Decl. ¶¶ 14-15; Taliman Decl. ¶ 4), they still do not reflect any contact with Utah or Plaintiff whatsoever.

Further, the Amended Verified Complaint contains no allegations that Mr. Hardwick took any action outside of his representative role as Quick Fi's CEO, nor does it contain any allegations that Quick Fi is so "influenced or governed" by Mr. Hardwick that the separateness of Mr. Hardwick and Quick Fi has ceased.  Plaintiff only alleges that Mr. Hardwick is "Quick Fi's CEO," (Amend. Compl. ¶ 30), which is not enough to show the necessary unity of interest and ownership to impute Quick Fi's purported contacts to Mr. Hardwick.  *Kendall,* 911 F.Supp.2d at 1195-96. Accordingly, the exercise of specific jurisdiction over Mr. Hardwick is inappropriate.

### ii.     Plaintiff has not otherwise adequately alleged—nor can it—that Quick Fi or Daniel Hardwick "directed" an agent to make calls to Utah on its behalf.

To the extent Plaintiff argues Quick Fi and Mr. Hardwick should be vicariously liable for calls made by Texnicha as Quick Fi's purported "agent," the unauthorized conduct of any such alleged agent cannot subject Quick Fi or Mr. Hardwick to specific jurisdiction in Utah.  *Nat'l Gypsum Co. v. Dalemark Indus., Inc.*, 773 F. Supp. 1476, 1480-81 (D. Kan. 1991) ("purposeful availment analysis generally demands that *the defendant* affirmatively act to allow or promote the transaction of business within that forum;" "[t]he unilateral activities of another party or a third person are not sufficient contacts with the forum state.") (emphasis added).  Only "in rare circumstances" do courts impute one company's contacts to another, such as when a corporation "direct[s] its agents" to take action in the forum.  *Hernandez v. Chevron U.S.A.*, Inc., 347 F. Supp. 3d 921, 966 (D.N.M. 2018).  Quick Fi did no such thing.

First, Plaintiff has not adequately alleged Quick Fi or Mr. Hardwick "directed" Texnicha to contact Plaintiff on its behalf.  Not only did neither Quick Fi nor Mr. Hardwick in fact provide Texnicha with a calling list that included Plaintiff's number, (Hardwick Decl. ¶¶ 14-15; Taliman Decl. ¶ 4), but even if Plaintiff's allegations are taken as true, Plaintiff has failed to allege that Quick Fi or Mr. Hardwick expressly directed Texnicha to call Plaintiff, or any other numbers for that matter, on the alleged list or that Quick Fi or Mr. Hardwick somehow controlled the timing, frequency, purpose or content of any of the calls.  Plaintiff only alleges Quick Fi "provided" and/or "manage[d]" this purported list. (Amend. Compl. ¶¶ 29, 31.)  The Amended Verified Complaint contains no allegations suggesting Quick Fi or Mr. Hardwick "directed" Texnicha to actually make the calls or take any action at all, nor has Plaintiff specifically alleged Quick Fi has any control over Texnicha.  Plaintiff conclusorily recites that Quick Fi had "the right to control, the ability to control or otherwise could and should have controlled the actions of [Texnicha]," (Amend. Compl. ¶ 31), but makes no specific allegations supporting this assertion.  Courts have routinely dismissed similarly deficient complaints.  *See, e.g.*, *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *4-5 (D.N.M. Sept. 28, 2018) (unpublished) (TCPA claim dismissed because mere allegations call was transferred to defendant's in-house telemarketer did not show defendant controlled the initiation of the telephone call to plaintiff); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-532, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (unpublished) (complaint dismissed for failure to state a TCPA vicarious liability claim where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the third-party caller and had "virtually no allegations regarding the relationship between [the defendant] and [the third party]"); *Bank v. All. Health Networks, LLC*, No. 15-CV-213, 2015 WL 4645317, at *1 (E.D.N.Y. Aug. 4, 2015) (unpublished), *aff'd*, 669

F. App'x 584 (2d Cir. 2016) (Complaint in which plaintiff "allege[d] merely that the calls at issue were made 'by, or on behalf of, or with the authorization of [the defendants]'" was insufficient to state a vicarious liability claim.); *Reo v. Caribbean Cruise Line, Inc.*, No. 14-CV-1374, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (unpublished) (TCPA vicarious liability claim dismissed where "sparse allegations do not allege any facts that show [defendant] had any power to give interim instructions or otherwise had any control over the performance" of the third party).

Second, Plaintiff cannot cure these pleading defects. Texnicha, the third-party company that referred Plaintiff to Quick Fi, is not owned in whole or in part by Quick Fi, and is not an agent of Quick Fi.[2] (Hardwick Decl. ¶ 15; Taliman Decl. ¶ 1.) Texnicha is an independent marketing company and does not even have an exclusive referral relationship with Quick Fi, meaning all third-party marketing companies Quick Fi works with refer potential customers to multiple

---

[2] We note Plaintiff hasn't and can't establish actual authority, whether express or implied, which must stem from a principal's expressions to an agent. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013). Actual authority only exists when an agent "'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to engage in an action.'" *Id.* (quoting Restatement (Third) of Agency § 2.01). Based on Plaintiff's allegations alone, Texnicha could not have reasonably believed either Quick Fi or Mr. Hardwick wished Texnicha to engage in telemarketing in violation of the TCPA given that Plaintiff expressly admits Quick Fi and Mr. Hardwick allegedly attempted to comply with TCPA requirements "by running the [purported] dialing list through TCPA and DNC removal software before sending Texnicha the list" (Amend. Compl. ¶ 29(g)).

Similarly, Plaintiff hasn't and can't establish apparent authority because Quick Fi and Mr. Hardwick did not authorize or ratify the calls allegedly violating the TCPA, as Plaintiff attempts to suggest. For authorization or ratification to occur, the principal must have "knowledge of material facts involved in the original act." *Am. Nat'l Bank of Sapulpa v. Bartlett*, 40 F.2d 21, 23 (10th Cir. 1930). Again, neither Quick Fi nor Mr. Hardwick provided Texnicha with the alleged list of phone numbers, nor did they have any knowledge about telemarketing calls made by Texnicha, which could have been referred to any other similar company. (Hardwick Decl. ¶¶12-16.) Plaintiff's allegations regarding Quick Fi's and Mr. Hardwick's attempts to comply with the TCPA, (Amend. Compl. ¶ 29(g)), further undercut its implication that Quick Fi or Mr. Hardwick somehow had knowledge that Texnicha's calls were violating the TCPA and still ratified them.

[2] Plaintiff does not allege this email came from Mr. Hardwick. (Amend. Compl. ¶ 24.) Again, Quick Fi's purported contacts with Utah cannot be attributed to Mr. Hardwick. *See* discussion in Section IC.

companies who might arrange financing for the businesses it solicits.  (Hardwick Decl. ¶¶ 12, 16; Taliman Decl. ¶ 3.)  Nor does Quick Fi have an exclusive relationship with Texnicha. (Hardwick Decl. ¶¶ 12, 16.)  Quick Fi arranges financing for businesses referred by multiple third parties. (*Id.*) Quick Fi simply pays a finder's fee to third party marketing companies that refer customers. (*Id.* ¶ 6.)  Accordingly, Quick Fi did not "direct" any purported agent to make calls violating the TCPA to Utah on its behalf—courts in the Tenth Circuit recognize no personal jurisdiction in such cases where no facts connect the caller to the defendant and the plaintiff simply relies on conclusory allegations.  *See, e.g., Childress v. Deering*, No. 18-CV-0455 LF-KBM, 2019 WL 409825, at *4-5 (D.N.M. Jan. 29, 2019) (unpublished) (no personal jurisdiction where defendant did not call plaintiff and plaintiff simply speculated that because caller had same address as defendants' the caller and defendant were connected, but defendant stated he neither made outbound calls to the plaintiff nor employed anyone to make such calls); *Arnold v. Grand Celebration Cruises, LLC*, No. CIV 17-0685 JP/KK, 2017 WL 3534996, at *3-6 (D.N.M. Aug. 16, 2017) (unpublished) (no personal jurisdiction where defendant specifically denied telemarketing, and plaintiff relied solely on a telemarketer's representation of her association with an entity with the same name as a cruise ship defendant operated); *Cunningham v. Local Lighthouse Corp.*, No. 3:16-CV-02284, 2017 WL 4053759, at *3-4 (M.D. Tenn. Aug. 7, 2017) (unpublished) (no personal jurisdiction where plaintiff conclusorily alleged corporate officers' involvement in authorizing a telemarketing scheme).

For instance, in a similar case involving purported violations of the CAN-SPAM Act, the District of Utah declined to exercise specific jurisdiction where the actions at issue were taken by defendant's third-party publishers.  Specifically, in *ZooBuh, Inc. v. Williams,* ZooBuh, Inc. ("ZooBuh"), a Utah corporation providing email, blog and chat services for its customers, claimed

Thrive Marketing Group ("Thrive"), a Tennessee digital marketing company, through its third-party publishers sent approximately 30,611 emails to ZooBuh customers in violation of the CAN-SPAM Act.   No. 2:13-CV-791 TS, 2014 WL 7261786, at *1 (D. Utah Dec. 18, 2014) (unpublished).  ZooBuh sued Thrive in Utah, and Thrive moved to dismiss for lack of jurisdiction based on the facts that (i) Thrive did not send any of the allegedly actionable emails to Utah, and (ii) Thrive did not have knowledge as to where its third party publishers were sending the emails. *Id.* at *5.  In holding specific jurisdiction was lacking, the court found there was no evidence of an agency relationship given that Thrive "has stated that it has no involvement with or control over the origination, approval, or delivery of the emails" and "does not… know where the publishers send the emails[.]" *Id.*

In summary, Texnicha is not Quick Fi's agent and neither Quick Fi nor Mr. Hardwick can be subject to specific jurisdiction in Utah based on Texnicha's alleged conduct.  Again, neither Quick Fi nor Mr. Hardwick ever participated in, set-up, directed, or in any way controlled the alleged telephone calls to Plaintiff, nor did Quick Fi or Mr. Hardwick have the right to do any such things.  (Hardwick Decl. ¶ 13.)  As established, Quick Fi does not make outbound telemarketing calls of the kind Plaintiff alleges he received. (*Id.*  ¶ 10.)  While Quick Fi accepts referrals from third parties, those third parties do so non-exclusively and as independent contractors.  (*Id.* ¶ 12.) Like Thrive in *Zoobuh*, Quick Fi has no control over any telephone calls that such third parties may make, nor does it possess any knowledge of where those third parties potentially make calls. (*Id.* ¶ 13.)  Accordingly, neither Quick Fi nor Mr. Hardwick can be subject to specific jurisdiction in Utah based on calls they in no way "directed."  *See Velez v. Portfolio Recovery Assoc., Inc.*, 881 F. Supp. 2d 1075, 1083 (E.D. Mo. 2012) (dismissing TCPA claim against parent company for lack

of personal jurisdiction, and holding that plaintiff failed to meet "her burden of demonstrating" that defendant, as opposed to separate company, initiated contacts with Missouri).

### iii. Quick Fi's alleged email to Plaintiff does not give rise to Plaintiff's cause of action.

Plaintiff additionally alleges that Quick Fi emailed Plaintiff a loan application after Plaintiff answered the last alleged call. (Amend. Compl. ¶¶ 23-24.) This lone allegation of conduct directed to Utah is similarly insufficient for specific jurisdiction.[3] First, a plaintiff cannot lure a defendant into contacting the forum state to establish jurisdiction. *See, e.g., ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 333 (D.S.C. 1999). As Plaintiff concedes in his Complaint, Plaintiff "asked … for additional information;" Quick Fi did not initiate this contact with Plaintiff. (Amend. Compl. ¶¶ 23-24.) Second, the prohibitions of the TCPA do not apply to email messages. *Prukala v. Elle*, 11 F. Supp. 3d 443, 448-49 (M.D. Pa. 2014). As such, there is no causal link between the alleged email contact and Plaintiff's purported injuries under the TCPA—as is expressly required to establish specific jurisdiction. *Van Ornum*, 2017 WL 9481123, at *11-12. In short, Quick Fi cannot be subject to specific jurisdiction in Utah based on the single alleged email.

### D. The exercise of jurisdiction over Quick Fi or Daniel Hardwick in Utah would not comport with "traditional notions of fair play and substantial justice."

As shown above, Quick Fi and Mr. Hardwick lack the requisite minimum contacts with Utah to establish general or specific jurisdiction. Therefore, this Court need not determine whether the exercise of jurisdiction would comport with "traditional notions of fair play and substantial

---

[3] Plaintiff admits this email did not come from Mr. Hardwick personally. (Amend. Compl. ¶ 24.) We emphasize, again, Quick Fi's purported contacts with Utah cannot be attributed to Mr. Hardwick. *See* discussion in Section IC above.

justice," or in other words, if jurisdiction would be "reasonable." *Zoobuh*, 2014 WL 7261786, at

* 5; *Neuer*, 2015 WL 4634044, at *4.  Notwithstanding, it would be unreasonable for a Utah court

to exercise personal jurisdiction over Quick Fi or Mr. Hardwick.

In assessing reasonableness, courts weigh the following five factors: (i) the burden on the

defendant; (ii) the forum state's interest in resolving the dispute; (iii) plaintiff's interest in

receiving convenient and effective relief; (iv) the interstate judicial system's interest in obtaining

the most efficient resolution of controversies; and (v) the shared interest of the several states in

furthering fundamental substantive social policies.  *Neuer*, 2015 WL 4634044, at *4. (internal

citations omitted).

These factors do not support personal jurisdiction over Quick Fi or Mr. Hardwick.  First,

Quick Fi is a small New York-based business, and Mr. Hardwick is a resident of New York.

(Hardwick Decl. ¶¶ 2, 5-6.)  Traveling to and litigating in Utah would be significantly more

expensive and inconvenient for Quick Fi and Mr. Hardwick than litigating in their home state—

thus the first factor strongly favors Quick Fi and Mr. Hardwick.  (*Id.* ¶ 17.)  Second, unlike claims

which arise under state law, such as tort claims for example, TCPA claims arise under federal law;

Utah therefore has no greater interest in resolving TCPA disputes than any other federal forum.

*Cf. Neuer*, 2015 WL 4634044, at *4.  Thus, the second factor similarly favors Quick Fi and Mr.

Hardwick.  The third factor turns on whether Plaintiff's injuries can be adequately addressed in

another forum.  *Id.*  Again, this factor weighs in Quick Fi's and Mr. Hardwick's favor because the

TCPA is federal law, and Plaintiff's chances of recovery on his TCPA claims will therefore not be

"greatly diminished" (if at all) should he be forced to litigate in another forum.  *Id.*  The remaining

factors favor neither party.  *Id.*  at *5.  Accordingly, a majority of the factors weigh in favor of

Quick Fi and Mr. Hardwick rendering it unreasonable for a Utah court to exercise personal jurisdiction in this case.

II.     **This case should be dismissed as against Daniel Hardwick pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim for personal liability.**

    A.     **Legal standard.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a court must accept a plaintiff's well-pleaded allegations as true for purposes of deciding a 12(b)(6) motion, the plaintiff must still "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *US Fax Law Ctr., Inc. v. iHire, Inc.*, 374 F. Supp. 2d 924, 927 (D. Colo. 2005), aff'd, 476 F.3d 1112 (10th Cir. 2007) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

    B.     **Plaintiff's allegations are insufficient to establish that Mr. Hardwick is personally liable under the TCPA.**

As an initial matter, Plaintiff has not specifically alleged that Daniel Hardwick individually engaged in any of the conduct necessary to state a TCPA claim. To state a claim under the TCPA, a plaintiff must allege (1) the defendant called the plaintiff's cellular telephone (2) using an ATDS or an artificial or prerecorded voice (3) without the plaintiff's prior express consent. *Asher v. Quicken Loans, Inc.*, No. 2:17-CV-1203, 2019 WL 131854, at *1 (D. Utah Jan. 8, 2019) (unpublished). Again, the only allegations in the Amended Verified Complaint specific to Mr.

Hardwick include: (1) Mr. Hardwick is the CEO of Quick Fi; (2) Mr. Hardwick purportedly "manage[s] Texnicha's dialing leads by running the dialing list through TCPA and DNC removal software before sending Texnicha the list to call; and (3) Mr. Hardwick "controlled and provided the calling list Texnicha used to call Plaintiff." (Amend. Compl. ¶¶ 29-31.)  Plaintiff did not and cannot allege that Mr. Hardwick called Plaintiff using an ATDS or prerecorded voice—the Amended Verified Complaint admits as much given that Plaintiff's claims stem from a call by another alleged individual, identified only as "Ana." (Amend. Compl. ¶ 18.)  Again, neither Mr. Hardwick nor Quick Fi called Plaintiff, and neither Mr. Hardwick nor Quick Fi makes calls using an ATDS or artificial or prerecorded voice. (Hardwick Decl. ¶¶ 10-11.)  As such, Plaintiff has failed to state its TCPA claims against Mr. Hardwick.

The Amended Verified Complaint weakly attempts to establish personal liability for acts allegedly taken by Mr. Hardwick in his corporate capacity as Quick Fi's CEO.  However, "merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation."  *See Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 409 (10th Cir. 1958). To be personally liable, Mr. Hardwick would have to have specifically directed, sanctioned or had "active participation or cooperation in, a positively wrongful act or commission or omission." *Id.*; *see also Jones & Trevor Marketing, Inc. v. Lowry*, 233 P.3d 538, 543 (Ct. App. Utah 2010) (Under Utah law, "[a]side from liability premised on an alter ego theory, an officer or director of a corporation is not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity.") (internal quotations omitted).

Mr. Hardwick did no such thing here; he does not provide Texnicha with dialing leads or otherwise "manage" any such leads, nor did he provide the list of telephone numbers to Texnicha

allegedly containing Plaintiff's phone number. (Hardwick Decl. ¶¶ 14-15; Taliman Decl. ¶ 4.) However, even if Plaintiff's allegations were true—which they are not—they are hardly sufficient to establish the necessary level of participation in wrongdoing required to subject Mr. Hardwick to personal liability for actions taken in his corporate capacity.   Plaintiff simply alleges Mr. Hardwick provided the list to Texnicha, supposedly containing Plaintiff's number, which Texnicha used to call Plaintiff.  (Amend. Compl. ¶¶ 29-31.)  Plaintiff does not allege that Mr. Hardwick specifically directed Texnicha to call Plaintiff using an ATDS or prerecorded or artificial voice in violation of the TCPA, or that Mr. Hardwick had any knowledge whatsoever that Texnicha was making calls in violation of the TCPA.  In fact, Plaintiff expressly alleges that Mr. Hardwick was attempting to comply with the TCPA's requirements by "running the dialing list through TCPA and DNC removal software."  (Amend. Compl. ¶ 29(g).)  Even if this were true, this is clearly not the willful participation in wrongful activity required to subject Mr. Hardwick to personal liability. *Id*.; *see also Ball v. Dillard*, No. 2:99CV9336, 2000 WL 33710848, at *2 (D. Utah May 26, 2000) (unpublished).

Plaintiff's implication that Mr. Hardwick should be subject to personal liability because he is essentially an "alter ego" of Quick Fi is equally unavailing.  Both federal and Utah law apply a two-part test in deciding whether alter ego liability is present:

> [I]n order to disregard the corporate entity, there must be a concurrence of two circumstances: (1) there must be such unity of interest and ownership that the separate personalities of the [entity] and the individual no longer exist, viz., the [entity] is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (D. Utah 1979); *see also N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993) (articulating similar federal common law test). The first prong is referred to as the "formalities requirement" or "separate corporate entity prong;" the Tenth Circuit and Utah courts typically examine several factors in assessing whether there is such a unity of interest. *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 150 (Utah Ct. App. 2015). Courts evaluate (i) "the degree to which the corporate legal formalities have been maintained," and (ii) "the degree to which individual and corporate assets and affairs have been commingled," and consider undercapitalization, failure to observe formalities, absence of corporate records, and the use of the entity as a façade for the dominant owner. *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993); *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc.*, 344 P.3d at 150.

Here, Plaintiff has simply alleged Mr. Hardwick is Quick Fi's CEO. (Amend. Compl. ¶ 30.) The Amended Verified Complaint contains no other allegations purporting to establish alter ego liability. Accordingly, Plaintiff has failed to state its claims against Mr. Hardwick based on a theory of alter ego liability. *See N.L.R.B.*, 2 F.3d 1047; *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc.*, 344 P.3d at 150, 152 (upholding dismissal because association failed to show "'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist'").

## CONCLUSION

In sum, Quick Fi's and Daniel Hardwick's Motions to Dismiss should be granted. Neither Quick Fi nor Mr. Hardwick has sufficient contacts with Utah to justify general or specific personal

jurisdiction, and jurisdiction is not reasonable.  Plaintiff has also failed to state a claim against Mr.

Hardwick personally because Plaintiff has not alleged Mr. Hardwick engaged in any wrongful

activity or took action outside of his role as CEO of Quick Fi, nor can Plaintiff establish alter ego

liability.

DATED this 16th day of August, 2019.


/s/ Joseph Skinner

Joseph Skinner, #10832
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
Email: joseph@scalleyreading.net

Stuart M. Richter (*pro hac vice granted*)
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4400 telephone
(310) 788-4471 facsimile
stuart.richter@kattenlaw.com
C.A. Bar No. 126231

Andrew J. Demko (*pro hac vice granted*)
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4462 telephone
(310) 712-8436 facsimile
andrew.demko@kattenlaw.com
C.A. Bar No. 247320

ATTORNEYS FOR DEFENDANT

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 16th day of August, 2019, I caused a copy of the foregoing Motion to

Dismiss with its accompanying exhibits, to be served by CM/ECF and email upon the following

counsel of record for the Plaintiff:

> Rebecca Horne
> rhorne@lawhq.com


/s/ Emily Appel
_____
Emily Appel