Rebecca Horne, #16846
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Phone: (385) 233-6612 x3152
Email: rhorne@lawhq.com

*Attorney for Plaintiff*

---

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
### 351 S. West Temple, Salt Lake City, UT  84101

---

| | |
|---|---|
| **Thomas Alvord,** an individual<br><br>Plaintiff,<br><br>vs.<br><br>**Quick Fi Capital Inc.**, a corporation; **Daniel Hardwick**, individually and as CEO of Hardwick Investors Group LLC dba Quick Fi Capital; and **Texnicha Outsourcing Solution**, a corporation,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS**<br><br>Case No. 2:19-CV-00459-PMW<br><br>**Senior Judge Dee Benson** |

Plaintiff respectfully opposes Defendants' Second Motion to Dismiss [Docket #23], which challenges the Court's personal jurisdiction over Defendants Hardwick Investors Group LLC dba Quick Fi Capital (hereinafter "Quick Fi") and Daniel Hardwick "hereinafter "Hardwick"). Defendants oppose jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Defendants also raise a 12(b)(6) challenge to Plaintiff's right to relief.

Defendants allege that they do not regularly conduct business in Utah so as to subject them to general jurisdiction here. (Def.s' 2d Mot. Dismiss, 2.) [Dkt. #23] Defendants further claim that the Court cannot exercise specific jurisdiction over them because they did not make any calls to Plaintiff and were not responsible for the calls that were made to Plaintiff. Finally, Defendant Hardwick argues that Plaintiff has not alleged facts sufficient to state a claim against him for personal liability.

Plaintiff is confident that the Court is within its authority to exercise personal jurisdiction over Defendants. Defendants regularly direct telemarketing calls and business into Utah and have, on at least seventeen (17) occasions, contacted Plaintiff for that express purpose. Plaintiff is also confident that Quick Fi itself is directly and vicariously responsible for the calls that were made to Plaintiff and that Hardwick directed and controlled, or had the right and responsibility to direct and control and failed to direct and control, Quick Fi's telemarketing activities, including that of its third-party agents and vendors.  The evidence Plaintiff has obtained directly contradicts Defendants' arguments and substantiates Quick Fi's direct and/or vicarious liability, as well as Daniel Hardwick's personal liability. In this respect, both the original Complaint [Dkt. #6] and Plaintiff's Amended Complaint [Dkt. #19] allege facts sufficient to establish the Court's authority to exercise specific jurisdiction over Defendants Quick Fi and Hardwick, and to form the basis for Plaintiff's claim to relief against Defendant Hardwick personally. On these considerations alone, Defendants' second Motion to Dismiss should be denied.

Finally, Defendants' Motion to Dismiss is premature. Plaintiff's allegations are sufficient to survive a 12(b)(2) and 12(b)(6) motion, but if, after discovery, it were to be found that Plaintiff's Amended Complaint lacked basis, as Defendants allege, then either or both

Defendants could petition the Court for summary judgment. The Court may also choose to allow limited discovery on the issue of jurisdiction if the Court has doubts about the propriety of exercising personal jurisdiction over Defendants Quick Fi or Hardwick.

Dismissal is simply not appropriate at this stage of the proceedings, and Plaintiff's allegations are sufficient to establish minimum contacts for purposes of personal jurisdiction. Likewise, dismissal on 12(b)(6) grounds is inappropriate, as Plaintiff has indeed stated a claim against Defendant Hardwick personally for which the Court may grant relief if Plaintiff prevails. Plaintiff respectfully requests that the Court deny Defendants' second Motion to Dismiss, allowing Plainitff's suit to continue to discovery and trial.

## PROCEDURAL HISTORY

Plaintiff filed this suit in Utah State Court on May 29, 2019. Quick Fi removed the case to this Court on July 1, 2019. [Dkt. #2] and moved to dismiss on July 22, 2019 [Dkt. #18]. Plaintiff filed an Amended Complaint simultaneously with an Opposition to Quick Fi's Motion to Dismiss on August 2, 2019. [Dkt. #19, 20]. Plaintiff's Complaint added two defendants: Daniel Hardwick and Texnicha Outsourcing Solutions. Defendants Quick Fi and Hardwick filed a second Motion to Dismiss on August 16, 2019.  [Dkt. #23]. Defendant Texnicha Outsourcing Solution was served on August 8, 2019, but has failed to respond or appear.

## STATEMENT OF FACTS

Quick Fi made seventeen (17) telemarketing calls to Plaintiff's cell phone number in violation of the Telephone Consumer Protection Act ("TCPA"). (Compl. ¶¶ 13–15; Am. Compl. ¶¶ 14–16.) Defendant erroneously asserts that each of the calls came from only two numbers. (Def.'s Mot. Dismiss at 2.) However, the seventeen calls came from three numbers:

435-315-0709, 435-315-0710, and 435-315-0711. (Compl. ¶ 15; Am. Compl. ¶ 16.) The callers

used an automatic telephone dialing system ("ATD") to contact Plaintiff. (Compl. ¶¶ 23–25,

33–34, 49; Am. Compl. ¶¶ 18, 29c, 37–39, 46–47, 54–58.) Plaintiff answered the last call to

identify the telemarketer and asked Defendant to email additional information. (Compl. ¶ 16;

Am. Compl. ¶¶ 17, 23.) Plaintiff did *not* call Texnicha, as Defendants' have erroneously alleged.

(Def.s' 2d Mot. Dismiss, 6.) After Plaintiff answered the last call and requested more

information, Defendant Quick Fi emailed Plaintiff a loan application. (Compl. ¶ 17, Am. Compl.

¶ 24.)

Quick Fi Capital lists five employees on its official LinkedIn profile, one of which is

Diana Bien. (Am. Compl. ¶¶ 19–20.) On Diana Bien's LinkedIn profile, she lists her occupation

as telemarketing and her title as "Lead Generator" for "QuickFiCapital." (*Id.* at ¶ 22.)  Diana lists

her place of work as the Philippines. *Id.*  On May 28, 2019, Plaintiff answered a call from

435-315-0710 in which the caller, after an obvious pause and a beep, identified herself as "Ana."

(*Id.* at ¶ 17.)  A common nickname for Diana is "Ana." (*Id.* at ¶ 21.) "Ana" transferred Plaintiff

to Brian Edelson, and introduced them to each other. (*Id.* at ¶ 23.)  Ana identified herself on the

transfer to Brian as "Ana from downstairs." Brian did not object to this characterization. (*Id.* at

¶¶ 23, 25.) Brian emailed Plaintiff a loan application, with an email address coming from

"@quickficapital.com," and links within the email to quickficapital.com. (*Id.* at ¶ 24.)

Defendant Quick Fi sent an unsolicited letter to Plaintiff after the original complaint was

filed. (*Id.* at ¶ 26.) In this letter, Defendant identified the company that made the calls to Plaintiff

as "Texnicha Outsourcing Solutions" ("Texnicha") but did not say how they knew Texnicha had

placed the calls to Plaintiff. (*Id.* at ¶ 27.)  Defendant Quick Fi admitted that the May 28, 2019

call referred Plaintiff to Quick Fi. *Id.* The only person Plaintiff spoke with after being "referred" was Brian Edelson. (*Id.* at ¶¶ 23–25.) Brian Edelson has a quickficapital.com email and is a known Quick Fi employee. *Id.* Plaintiff contacted Texnicha for more information and was told that Texnicha has been working with Quick Fi for the past 4 years, that leads for Quick Fi are exclusive to Quick Fi, that Texnicha can use its own dialer or a client's dialer, that Texnicha's clients provide it with numbers to dial, that Texnicha calls under a false name to "stay out of trouble," that Texnicha is a Philippine corporation, and that Daniel Hardwick and Alex Cutrone personally manage Texnicha's dialing leads and run the dialing list through TCPA and DNC removal software before sending Texnicha the list of numbers to call. (*Id.* at ¶¶ 28–29.)

Daniel Hardwick is the CEO of Defendant Quick Fi, also known as Hardwick Investors Group LLC dba Quick Fi Capital. (*Id.* at ¶ 30.) Alex Cutrone is an employee of Quick Fi Capital. *Id.* Four employees of Quick Fi Capital have been identified as being responsible for the seventeen (17) calls made to Plaintiff. This includes Quick Fi's CEO, Daniel Hardwick, as well as Alex Cutrone, who are allegedly in charge of providing Texnicha a list of numbers to dial that have been "scrubbed" for DNC and TCPA compliance. (*Id.* at ¶¶ 19–30.) Quick Fi employee Ana identified herself as the caller, which Quick Fi employee Brian Edelson ratified. (*Id.* at ¶¶ 23–25.) Quick Fi, through Daniel Hardwick, directly provided Plaintiff's number for contact, whether Quick Fi's employees called Plaintiff or whether Quick Fi gave Plaintiff's number to Texnicha to call. (*Id.* at 18, 29.)

## ARGUMENT

Quick Fi is subject to personal jurisdiction in Utah because there is sufficient evidence to establish that Quick Fi called Plaintiff and otherwise purposefully directed at least seventeen calls to Plaintiff in Utah**.**

### I.     Personal Jurisdiction - Legal Standard.

A 12(b)(2) motion to dismiss tests the plaintiff's theory of personal jurisdiction as well as the facts supporting it. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153–54 (2d Cir. 1999). The Court must not only test the jurisdictional theory, but also the facts that allege the defendant subjected itself to the Court's jurisdiction. *Id.* at 154. A dismissal for lack of personal jurisdiction is a dismissal without prejudice because it is not a dismissal on the merits. In essence, the court determines it is powerless to proceed to judgment and can not adjudicate the validity of the claim. Where, as here, the Defendant raises a timely personal jurisdiction challenge, the Plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction of the Defendant without violating due-process requirements. *See Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991).

General personal jurisdiction may be established by showing that the Defendant's contacts with Utah are so continuous and systematic that it is essentially at home in Utah. This level of substantial and familiar contacts with the forum state may establish personal jurisdiction over a Defendant even for claims that arise that are distinct from the Defendant's continuous and systematic activities within that forum. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

Specific personal jurisdiction may be established by showing that the Defendant has sufficient minimum contacts with Utah to satisfy the due process requirements of the Fourteenth Amendment to the Constitution of the United States of America. This kind of personal jurisdiction is appropriate when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id*. (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Here, Plaintiff bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). That burden can be met simply with a prima facie showing. *Id*.  "All well-pled allegations in the plaintiff's complaint are taken are true unless they are contradicted by the defendant's affidavits." *Zooba, Inc. v. Savicom, Inc.*, Case No. 2:17-cv-01098-JNP (D. Utah Jun. 8, 2018) (quoting *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990). If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor. *Id.* In Utah, a verified but unsworn declaration, given under penalty of perjury, meets the same evidentiary standard as an affidavit and has the same effect. Utah Code § 78B-18a-104.  Therefore, any conflicting facts presented in the parties' affidavits and Plaintiff's verified pleadings must be resolved in Plaintiff's favor.

While Quick Fi argues that it is not "at home" as a corporation in Utah, that is not the only test that establishes personal jurisdiction. Plaintiff does not allege that Defendant Quick Fi has continuous and systematic contacts with Utah such that those contacts would satisfy the requirements to find general jurisdiction. Instead, the Court has jurisdiction over Quick Fi based on principles of specific jurisdiction.

The same is true for Defendant Hardwick. While Plaintiff does not allege that Daniel Hardwick owns property in Utah or that he is employed or otherwise engaged in dealings in Utah, Plaintiff's claims are based on Mr. Hardwick's purposeful and repeated contact with Plaintiff, directed intentionally into this forum, and which are sufficient to find specific jurisdiction.

In order to find specific jurisdiction, the plaintiff must establish the defendant's minimum contacts with the forum by showing that the defendant "purposefully directed its activities toward the forum jurisdiction, and the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Trujillo v. Williams,* 465 F.3d 1210, 1218 (10th Cir. 2006) (internal citations omitted).  To show a defendant's activities are "purposefully directed," the plaintiff must allege the defendant took actions that were 1) intentional, 2) expressly aimed at the forum state, and 3) with the knowledge that the harm would be felt in the forum state. *See Van Ornum v. Am. Med. Ass'n,* No. 2:14-2019 WL 1382286 at ¶ 5 (D. Utah Mar. 27, 2019). Minimum contacts are the basis for specific personal jurisdiction over each of the defendants: Quick Fi, Hardwick, and Texnicha.

**A.      Quick Fi is subject to specific personal jurisdiction in Utah, because it purposefully directed its activities to Utah.**

### 1. *Quick Fi intentionally made the calls to Plaintiff.*

Plaintiff has alleged seventeen (17) phone calls he received from three telephone numbers: 435-315-0709, 435-315-0710, and 435-315-0711. (Compl. ¶ 15; Am. Compl. ¶ 16.) When Plaintiff answered the last call, the caller identified herself as "Ana" who works "downstairs" with Brian Edelson, a known Quick Fi employee who also identified his company as Quick Fi in his later emails to Plaintiff. (Am. Compl. ¶¶ 17–25.) Thus, because the calls were

made by Diana, aka "Ana", and transferred to Brian Edelson, both of whom are Quick Fi

employees, it was in fact Quick Fi who intentionally made the calls to Plaintiff.

Quick Fi knew Plaintiff's cell phone number had an area code of 801. If Quick Fi had no

knowledge of Plaintiff's area code and location, it would not have been possible for Quick Fi to

call Plaintiff. By making calls to a phone number with the area code of 801, the calls were

expressly aimed at the forum state of Utah. Additionally, Quick Fi would have reasonably known

that any harm from its calls would be felt in the forum state to which the area code is assigned.

Quick Fi's contradictory claims that it "does not engage in outbound telemarketing

calling and does not use an automated dialing system" and that Quick Fi does not control or

direct the activities of its third-party telemarketing companies is supported only by an affidavit

from Daniel Hardwick (Def.'s 2d Mot. Dismiss, Exhibit 1, Decl. of Daniel Hardwick, ¶¶ 10, 12).

All factual disputes between this Declaration and the Verified Amended Complaint are resolved

in the plaintiff's favor, as a matter of law. *Zooba, Inc. v. Savicom, Inc.*, Case No.

2:17-cv-01098-JNP (D. Utah Jun. 8, 2018) (quoting *Kennedy v. Freeman*, 919 F.2d 126, 128

(10th Cir. 1990).

Because the seventeen (17) calls to Plaintiff were made by Quick Fi employees,

Defendant intentionally made the calls to Plaintiff. Quick Fi initiated the calls and took

intentional action directed at Plaintiff in Utah. Quick Fi has "purposefully directed its activities

toward the forum jurisdiction," Utah, "and the underlying action is based [on TCPA and DNC

violations] that ar[o]se out of or relate to the defendant's contacts with the forum." *Trujillo* at

1218. Therefore, Defendant is subject to the Court's exercise of specific jurisdiction.

> ### 2. *Alternatively, Quick Fi authorized its agent, Texnicha, to make the calls to Plaintiff on Quick Fi's behalf.*

### a. TCPA vicarious liability standards

For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* 10 FCC Rcd 12391, 12397 (¶ 13) (August 7, 1995). A company on whose behalf a telephone call is made bears the responsibility for any violations. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 564 (January 4, 2008). And on May 9, 2013 the FCC instructed that sellers such as Quick Fi may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6588 (¶37) (2013).

This rule was further clarified by the FCC, stating that a corporation or other entity that contracts out its telephone marketing is "vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) [of the TCPA] that are committed by third-party telemarketers." *Id.* at 6574. This includes liability not only under principles of "formal agency, but also principles of apparent authority and ratification." *Id.*

>   *b.   Quick Fi is vicariously liable for Texnicha's calls to Plaintiff.*

Quick Fi originally claimed that the calls must have been made by an unknown third-party marketing company that makes referrals to Quick Fi.  Def.'s Mot. Dismiss at 7.  After Plaintiff pointed out to the Court that this was not the story Quick Fi told Plaintiff, in an unsolicited prior letter (Opp. Mot. Dismiss at 9, Dkt #20), Quick Fi changed its tune. In that letter to Plaintiff, Defendant identified Texnicha as the company who referred Plaintiff's call to Quick Fi, and further alleged that Texnicha was solely responsible for making the calls to Plaintiff. (Am. Compl. ¶¶ 26–27.)

Defendants have now conceded that Texnicha did, indeed, place the calls to Plaintiff on Quick Fi's behalf. (Def.s' 2d Mot. Dismiss at 5–6, *see also* Decl. Mark Taliman, Exh. 2, ¶¶ 4–5.) Further, Defendants agree that Texnicha transferred the call, once Plaintiff answered, to Quick Fi. *Id*. *See also* Hardwick Decl. ¶¶ 11, 16.  Defendants also concede that Texnicha's customers, including Quick Fi, "retain Texnicha to make outgoing calls" and "refer[] the leads it generates" back to Quick Fi. (Taliman Decl, ¶ 2.)

In preparing for this case, Plaintiff conducted investigation that revealed evidence that Texnicha itself confirmed: Quick Fi provides Texnicha with the numbers that Texnicha dials when calling leads for Quick Fi, and that Quick Fi's CEO, Daniel Hardwick, is personally responsible for providing those numbers to Texnicha and ensuring that they comply with TCPA and DNC regulations. (Am. Compl. at ¶¶ 28–30.)  Although Texnicha now claims Plaintiff's number was provided by a company known as "Growth Capital," Texnicha provided a written statement to Plaintiff that Daniel Hardwick and Alex Cutrone provide the leads, or list of telephone numbers, for Texnicha to call on Quick Fi's behalf, a communication that Mark

Taliman conveniently excluded from his Declaration. *See* Exhibit A. Quite apart from the leap of logic it requires to assert that "Growth Capital" would provide Texnicha with a list of numbers they should call to benefit a rival finance company, any factual disputes between Taliman's Declaration and the Verified Amended Complaint must be resolved in the plaintiff's favor. *Zooba, Inc. v. Savicom, Inc.* We must presume, at least initially and as a matter of law, that Daniel Hardwick and Alex Cutrone provide Texnicha with the numbers Texnicha calls on Quick Fi's behalf.

Plaintiff has alleged in a Verified Amended Complaint that Quick Fi provided Texnicha with Plaintiff's number, gave Texnicha assurances that calling the numbers Quick Fi provided would be in compliance with TCPA and DNC regulations, and directed Texnicha to call Plaintiff's number along with the other numbers Quick Fi provided Texnicha. Defendants have conceded that Texnicha calls phone numbers on Quick Fi's behalf, for Quick Fi's benefit and for a commission. The solicitations were made on Quick Fi's behalf, and Quick Fi bears the responsibility for any TCPA violations committed during the solicitations. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 564 (January 4, 2008). *See also In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6588 (¶37) (2013).

While Quick Fi disputes directing Texnicha to take action in the forum by calling Plaintiff, Plaintiff has alleged that Hardwick and Cutrone, acting as employees and officers of Quick Fi, provided Texnicha with Plaintiff's number and are represented to Texnicha that these numbers complied with TCPA regulations. If these allegations are true, then Quick Fi has "directed its agents" to take action in the forum. *Hernandez v. Chevron U.S.A. Inc,* 347 F. Supp.

3d 921, 966 (D.N.M. 2018). For the purposes of deciding a motion to dismiss, factual disputes

must be resolved in Plaintiff's favor. Texnicha is thus Quick Fi's agent and Quick Fi is

vicariously liable for Texnicha's TCPA and DNC violations.

It is not relevant that Quick Fi does not own Texnicha, either in whole or in part. The

TCPA provides for vicarious liability for the actions of third-party telemarketing companies

hired by the defendant. *Supra* I.A.2.a.

If Texnicha is not found to be Quick Fi's agent, Plaintiff asserts that Quick Fi and

Texnicha are jointly and severally liable for the torts, since it is impossible for Plaintiff to

determine at this stage of litigation who actually provided Plaintiff's number to Texnicha for

them to call on Quick Fi's behalf and it is clear that Quick Fi either intentionally directed

Texnicha to call Plaintiff or was aware of and welcomed Texnicha's efforts to contact Plaintiff

on Quick Fi's behalf. Both parties were purposefully and intentionally involved in the scheme

that caused Plaintiff's harm, and under the vicarious liability rules promulgated by the FCC,

Quick Fi is liable for Texnicha's TCPA violations on Quick Fi's behalf.

B. **Daniel Hardwick is subject to specific personal jurisdiction in Utah and personal liability for Plaintiff's harm, because the TCPA specifically provides for officer liability and Quick Fi intentionally directed its activities toward Plaintiff in Utah.**

Defendants here conflate piercing the corporate veil with officer liability. While officer

liability is generally disfavored in the Tenth Circuit, it is specifically authorized in the TCPA.

Under 47 U.S.C. § 217, an individual officer may be personally liable for the acts of that

officer's company that violate the TCPA, such as those alleged in Plaintiff's Verified Amended

Complaint. The TCPA states specifically that:

> the act, omission, or failure of any officer, agent, or other person acting for
> or employed by any common carrier or user, acting within the scope of his

employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person.

47 U.S.C. § 217.

When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason, 2013 U.S. Dist*., LEXIS 159985, \*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415–16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

Daniel Hardwick is the controlling officer of Hardwick Investors Group LLC dba Quick Fi Capital ("Quick Fi"). He knew of Quick Fi's telemarketing conduct and directed agents of Quick Fi to engage in such conduct. According to Texnicha, Hardwick himself was responsible for providing Texnicha with a list of "leads" to call on Quick Fi's behalf, and which he represented complied with TCPA and DNC regulations. Hardwick was responsible for ensuring that Quick Fi and its vendors and third-party telemarketing affiliates complied with the TCPA. He is liable under the participation theory of liability, and whether he acted intentionally to violate the TCPA, or whether he failed to verify compliance with the TCPA, Hardwick was acting as CEO of Quick Fi and Quick Fi's acts, omissions, and failures are deemed to be his own. *See* 47 U.S.C. § 217. Hardwick is individually and personally liable under the TCPA for his company's failure to comply with its requirements and for Plaintiff's statutory harm.

Finally, any allegations of fact contained in the Hardwick Declaration that conflict with the facts alleged in Plaintiff's Verified Amended Complaint must be resolved in Plaintiff's favor, as a matter of law. *Zooba, Inc. v. Savicom, Inc.*

**III.   Exercising personal jurisdiction over Quick Fi and Hardwick in Utah comports with traditional notions of fair play and substantial justice.**

Clearly, Quick Fi and Hardwick have the necessary minimum contacts with Utah to establish specific personal jurisdiction. "[W]ith minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Dudnikov v. Chalk*, 514 F.3d 1063, 1079 (10th Cir. 2008) (internal citations omitted). If minimum contacts have been established, the Defendant must produce compelling reasons that personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). In examining the defendant's reasons, the Court must weigh five factors: (i) the burden on the defendant; (ii) the forum state's interest in resolving the dispute; (iii) the plaintiff's interest in receiving convenient and effective relief; (iv) judicial efficiency; and (v) the interests of the states in furthering fundamental substantive social policies." *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007).

Because Quick Fi and Daniel Hardwick have the same legal representation, and because Hardwick is personally liable under the TCPA for Quick Fi's violations, many of these arguments apply equally to both defendants.

First, although Quick Fi calls itself a "small New York-based business," it has offices in New York and California and has between 11-50 employees, according to LinkedIn.

(https://www.linkedin.com/search/results/all/?keywords=quick%20fi%20capital&origin=SPCK &spellCorrectionEnabled=false ) Quick Fi and Mr. Hardwick were able to hire attorneys to represent themselves in Utah. Although the cost of travel to Utah to litigate is more expensive than litigating in New York, the cost of travel for Quick Fi's pr Mr. Hardwick to represent themselves is not significantly more than it would be for Defendants to represent themselves in New York. Accomodations can be found in Utah much more cheaply than in New York, and attorney fees are much cheaper here than in either New York or California. Even the cost of court fees is lower in Utah than in New York. The first factor does not establish a compelling reason why personal jurisdiction over the Defendants should be ignored.

Second, Defendants that TCPA claims arise under federal law and that Utah has no greater interest in resolving TCPA claims than any other forum. Defendants neglect to mention that the Plaintiff is a Utah resident. Utah may not have an interest in resolving TCPA claims in general, but it has a significant interest in resolving its own citizens' claims. The second factor favors supporting a finding of personal jurisdiction.

Third, although Plaintiff could sue Defendants in any federal forum, the cause of action originated in Utah, the nexus is in Utah, and the harm occurred in Utah. In contrast to Defendants' claims that it is just a "small New York-based business," Plaintiff actually *is* a single individual, with significantly less resources than a financing company. Plaintiff will encounter much more difficulty litigating in another forum, and Defendant itself chose to remove Plaintiff's suit from state court to this Court. In doing so, it could be argued that Defendant ratified this Court as an appropriate venue for it to litigate in. Otherwise, it would have filed a 12(b)(2) motion in State Court. The third factor weighs heavily in Plaintiff's favor.

Fourth, litigating in New York or any other venue would significantly delay the suit, as Plaintiff's resources as an individual are limited. Judicial economy favors a speedy resolution, which can be obtained best in the forum in which personal jurisdiction is appropriate and the suit has already begun being litigated. Defendants argue that this factor favors neither party. However, denying jurisdiction in Utah despite Defendants' intentional and purposeful contacts with Plaintiff here would require Plaintiff to refile in an unfamiliar and foreign forum. It would cause additional delay in a case that is not for a significant amount of money. It is not implausible to assume that Plaintiff's fees would soon outweigh the statutory damages Defendants have incurred, a likely possibility which cannot have escaped Defendants' notice. This factor thus weighs heavily in Plaintiff's favor.

Fifth, the TCPA and DNC are federal law that each state has a substantial interest in enforcing. It is a substantive social policy in America that individuals may not be harassed and constantly interrupted by unsolicited and unwarranted telemarketing calls. Telemarketing violations are responsible for distractions, interrupting emergency and medical services, causing lost wages and lost human capital and time. The calls have have a negative cumulative effect on each of the States, in terms of human capital and the sheer resources that must be devoted to stopping, managing, and/or blocking these calls. Every State, including the State of Utah, has an obligation under federal law to enforce the TCPA and DNC, furthering the substantive social policies that have been created to ameliorate the negative effect these unwanted calls have on its citizens and on our nation. The fifth factor favors a finding of personal jurisdiction. In short, Defendants have not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Dudnikov* at 1079.

**CONCLUSION**

Defendants' second Motion to Dismiss should be denied. It is premature. Plaintiff has

alleged sufficient facts to support a claim to relief against Quick Fi and against Daniel Hardwick

personally. To the extent that the motion could be considered valid, it should still be denied.

Plaintiff has not yet been able to conduct discovery, but has alleged sufficient purposeful

behavior on Quick Fi's part to satisfy specific personal jurisdiction. Finally, the exercise of

jurisdiction is reasonable and satisfies "traditional notions of fair play and substantial justice."

*Int'l Shoe* at 316.

DATED this 30th  day of August, 2019.

                                        /s/ *Rebecca Horne*
                                        Rebecca Horne
                                        Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of August, 2019, I served a true and correct copy of the foregoing AMENDED COMPLAINT to the following by CM/ECF and email:


Thomas Alvord
10782 N. La Costa
Cedar Hills, Utah 84062
Email: thomas@lawhq.com
*Plaintiff*

Joseph Skinner, #10832
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
Email: joseph@scalleyreading.net

Stuart M. Richter (applying pro hac vice)
Andrew J. Demko (applying pro hac vice)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Tel. (310) 788-4400
Email: stuart.richter@kattenlaw.com
andrew.demko@kattenlaw.com

*Attorneys for Defendant*


Date: August 30, 2019


 /s/ *Rebecca Horne*

Rebecca Horne
Attorney for Plaintiff